CASE 36—ACTION BY ADOLPH L. SCHMIDT, INDIVIDUALLY AND AS TRUS-
TEE, &C., AND OTHERS AGAINST LOUISVILLE, CINCINNATI & LEX-
INGTON RAILWAY CO., &C. FOR AN ACCOUNTING OF EARNINGS TO
THE PARTIES ENTITLED THERETO.—DEC. 13.

# Schmidt and Others v. Louisville, C. & L. Railway Co.

119    287
127    784

119    287
s128    233

APPEAL FROM JEFFERSON CIRCUIT COURT, LAW AND EQUITY DIVISION—
STERLING B. TONEY, JUDGE.

FROM THE JUDGMENT SCHMIDT AND OTHERS APPEAL. REVERSED.

RAILROAD BONDS—ACTION ON COUPONS—ACCOUNTING—SUFFICIENCY OF
PETITION—RES ADJUDICATA—NET EARNINGS—SUFFICIENCY OF
EVIDENCE.

1. In an action against a lessee railroad company for an account-
ing under the lease, by which it agreed to apply the net
earnings to the payment of a mortgage bond and coupons, a pe-
tition which seeks to recover not only on the coupons due when
the petition was filed, but to compel payment into court of the
net earnings as they might thereafter accrue, to meet subse-
quent coupons, and to provide a fund to meet the bond at ma-
turity, is sufficient, without a subsequent amendment, to cover
the accounting of net earnings between the filing of the petition
and the hearing of the cause.

2. Where a lessee railroad company agreed to apply the net
earnings to the payment of a mortgage bond and coupons, and
to furnish quarterly reports of earnings and operating expenses,
etc., on a petition against such lessee for an accounting on its
failure to so apply its net earnings or to make such reports,
plaintiff need not allege that there were net earnings, it being
sufficient to set forth the bond, coupons, aver nonpayment and
ask for an accounting.

3. An action on coupons from a mortgage bond is not on the
same cause of action as a former judgment on other coupons
from the same bond. Hence the former judgment renders res
judicata only such issues as were actually raised, litigated and
determined by the former judgment.

4. Under an agreement by which a lessee railroad company
agreed to apply certain net earnings in payment of a mortgage
bond and coupons, and to make quarterly statements as to earn-

ings and expenses, it can not delay making such statements and payments, and afterwards set off losses against such net earnings.

5. Evidence considered, and HELD that the expenses of a railroad company, such as rents, taxes and construction, should be charged to capital, rather than to operating expenses.

SIMRALL & DOCLAN, PIRTLE, TRABUE & COX, W. S. PRYOR AND J. H. HAZELRIGG, ATTORNEYS FOR APPELLANTS.

POINTS AND AUTHORITIES.

1. The net earnings of a railroad are ascertained by deducting from the gross earnings the expenses of operating the road by which the receipts are earned. The cost of transportation is ascertained by proportion and the proper percentage charged to the business in question—"all, of course, aside from and exclusive of the expenditure of capital laid out in constructing and equipping the works themselves." If this rule had been followed in the lower court, the appellants would have recovered a judgment for $139,961.90. Schmidt v. L. & N. R. R. Co., 95 Ky., 289, 300; Union Pacific R. R. Co. v. U. S., 99 U. S., 420.

2. The appellees had no right to charge against the net earnings covered by appellants' mortgage the enormous expense of reconstructing the Shelby Branch Railroad and converting it from a country road into a trunk line.

3. The appellees had no right to impose upon the appellants the burden of appellees' own fixed charges, such as rents and taxes, by deducting same from the net earnings covered by appellants' mortgage.

4. The argument of appellees' counsel upon the question of *res judicata* is wholly untenable. The subject matter of this appeal is not the same as the subject matter of the former appeal, nor is the cause of action to recover earnings accrued since 1890 · identical with the cause of action to recover earnings accrued prior to 1890. The questions involved upon this appeal were not raised or discussed or decided on the former appeal, and this court is not precluded upon this appeal from making a full inquiry into the facts of this case and rendering judgment in favor of the appellants, according to the uncontradicted testimony. Schmidt v. L. & N. R. R., 95 Ky., 289, 300; Bridges v. McAlister, 106 Ky., 791, 802; Black on Judgments, vol. 2, secs. 504, 506, 609, 610; Outram v. Morewood, 3 East, 346; Cromwell v. Sac County, 94 U. S., 351, 360; Davis v. Brown, 94 U. S., 423; Boyd v. Ala., 94 U. S., 645, 650; Wiggins Ferry Co. v. O. & M. Ry. Co., 142 U. S., 140; Nesbit v. Riverside District, 144

Schmidt and Others v. Louisville, C. & L. Ry. Co.

U. S., 610, 621; Board of Commissioners v. Sutcliffe, C. C. A.,. 8th Cir., 97 Fed. R., 270, 280; Aetna Life Ins. Co. v. Board of Commissioners, C. C. A., 8th Cir., 117 Fed. R., 8289; Denison. Mfg. Co. v. Scharf Co., C. C. A., 6th Cir., 121 Fed. Rep., 318; Linton v. Insurance Co., 104 Fed. R., 584; Commissioners v.. Platt, 79 Fed. R., 567; South Minn. Ry. Co. v. St. Paul Ry. Co., 55 Fed. R., 690; Philadelphia v. Ridge Ave. Ry. Co., 142 Pa. St., 484, 495.

See, also, tax cases from this court, viz: Newport. v. Com., 106 Ky., 434; Masonic Temple Assn. v. Newport, 103 Ky., 592; Louisville Bridge Co. v. City of Louisville, 22 Ky. Law Rep., 704; Henderson Bridge Co. v. City of Henderson, 105 Ky., 32, 173 U. S., 592.

HELM, BRUCE & HELM, ATTORNEYS FOR APPELLEE.

### POINTS AND AUTHORITIES.

1. The obligation of the appellee to account for net profits is dependent under the lease and mortgage upon it being made to appear that the net earnings from the Northern Division Road should prove insufficient to pay the interest and provide for the sinking fund on the mortgage bonds, and upon it being made further to appear that all other sources of raising money by that company should fail. Therefore it is essential that these conditions precedent should be alleged in order to show a right of recovery. Averback v. Hall, 14 Bush, 505; Ormsby v. Louisville, 79 Ky., 197.

2. These conditions precedent are by appropriate pleadings shown to exist up to the time of the first judgment, to-wit, July, 1890, but they are not shown to exist, indeed there is no pleading of any kind relating to the period between 1890 and 1898, and this court can not assume because those conditions existed prior to 1890 that they necessarily existed after 1890.

3. It is claimed in the brief of counsel for appellant that the attempt to secure the net profits of the L. & N. subsequent to the first judgment is in the nature of an entirely separate and independent suit, and that therefore the judgment rendered on the first appeal of this case, covering the period from 1883 to 1890, should not be treated as a bar on the present appeal. Assuming this to be true, then there is no pleading of any character upon which to base a recovery for the period since July, 1890.

4. Upon the first appeal of this case the collateral contract which provided for the accounting by the L., C. & L. of net earn

ings in certain contingencies, for the payment of interest, was construed by this court to mean· that in order to ascertain net profits there should, ·among other things,, be deducted (a) the construction account, (b) the amount paid for taxes, and (c) the amount paid for rents. Upon the second appeal that same contract being involved between the same parties, the same conclusion should be reached, and the judgment upon the first appeal is conclusive upon this appeal, without reference to whether it was right or wrong. Bank v. Beverly, 1 How., 134; Tioga R. Co. v. Blossburg, &c., R. Co., 20 Wal., 137; Mason Lumber Co. v. Beuchtel, 101 U. S., 638; New Orleans v. Citizens' Bank, 167 U. S., 396; Henderson v. Henderson, 3 Hare, 115; Davis v. McCorkhill, 14 Bush, 754; `Jones v. Commercial Bank, 78 Ky., 424; Smith v. Brannon, 79 Ky., 119; Francis v. Wood, 81 Ky., 22.

5. The character of the charges which appear under construction account are really such charges as should be put under the "maintenance of way" account, and are not chargeable to capital account. Southern Pacific R. R. Co. v. Board of Railroad Commissioners, 78 Fed., 264; Union Pacific case, 99 U. .S., 455; U. S. v. Central Pacific, 99 U. S'., 402; Regan v. Farmers' Loan & Trust Co., 154 U. S., 407; Metropolitan Trust Co. v. H. & T. C. R. Co., 90 Fed., 683.

6. The claim that the coupons now involved are different from the coupons involved on the first appeal is not well founded in fact, because it is demonstrable that the coupons which were due at the time of the entry of the first judgment were not more than one-third paid by the recovery up to that time, and the interest on those same coupons (or, rather, those which were then due and not paid) up to this time, makes the total claim thereon greater than the amount reported by the commissioner. But even if the coupons were different, it could make no difference, because the court was not called on to construe any contract in the coupons, but in a' collateral contract which applied to them all alike.

OPINION OF THE COURT BY SPECIAL JUDGE MORROW—REVERSING.

On the 2d day of July, 1879, the Northern Division of the Cumberland & Ohio Railroad Company executed and delivered to Joshua F. Speed, as trustee, its deed of mortgage, by which it conveyed to him, all and singular, its property, franchises, etc., to secure the payment of 350 of its bonds,

of the denomination of $1,000 each, payable in 20 years, with interest at the rate of 7 per cent.; the latter represented by coupons payable semiannually. On the 28th of July thereafter, the said Northern Division, as lessor, executed a deed to the Louisville, Cincinnati & Lexington Railway Company, by the terms of which it leased to the latter for the period of 30 years its unfinished road, etc., upon certain terms and conditions therein expressed—*inter alia*, that the stockholders of said Northern Division would execute to the lessee a deed of mortgage upon all its property, franchises and resources except private subscriptions." It also provided that "it is further agreed and understood that in the operation of said line of railway said party of the second part will make to said first party quarterly returns giving full details of earnings, and operating expenses, including the expense of keeping the roadbed in order, and the net earnings arising therefrom shall be applied to the payment of the interest and providing a sinking fund and retiring said bonds; but out of the gross earnings shall be deducted annually the sum of one thousand dollars which shall be paid to the first party with which to pay expenses of keeping up its organization; and if the net earnings do not prove sufficient to pay the interest and provide for the sinking fund on said mortgage bonds, then second party, if all other sources of raising money of said first party prove insufficient, will supply the deficiency, so far as may be done; by appropriating the net earnings, or so much thereof as may be necessary, on its own lines which may accrue to it by reason of business coming to it from or over said party of the first part's lines." It was further agreed that the second party "should be indemnified out of the earnings for the cost of printing the bonds and issuing same or incidental

thereto." On the same day the Louisville, Cincinnati & Lexington executed and delivered to Speed, as trustee, a deed of mortgage, containing a covenant putting in lien the net earnings mentioned in the lease to it. The bonds, with coupons attached, were printed, issued, and sold by appellee. Each bond had printed on its face: "The holder of this bond, together with the holders of the others of this series, is entitled to a first lien, for the equal security of principal and interest, of each respectively, on all the property, rights, and franchises of the said Northern Division of the Cumberland & Ohio; as also a first lien on the net earnings of the Louisville, Cincinnati & Lexington, duly pledged thereto, which may accrue to it by reason of business coming to it over the lines of the mortgagor, the Northern Division of the Cumberland & Ohio." The mortgage referred to is the mortgage to Speed, of July 2, 1879.

None of the coupons which fell due subsequent to December 31, 1883, having been paid, the appellants on October 12, 1885, brought this action in equity to recover on the coupons and to enforce the lien. The foregoing matters were substantially set forth, and the various writings filed as exhibits. The petition, in substance, avers that the coupons were unpaid; that the defendant denied all responsibility for the payment of any of them, and had so informed plaintiffs; and that sufficient earnings had accrued to pay same. It further avers that defendant, though requested, had wholly failed to make any of the quarterly returns as provided for; that plaintiffs were ignorant of the exact amount of the net earnings, and that this information was exclusively within the knowledge of defendant; and that defendant "claims that, beside the net earnings of its own lines coming to it over the line of the Northern Division, all other sources of raising

money of said Northern Division have proved insufficient to pay said interest, or to provide for such sinking fund." The prayer of the pleading is "that this action be referred to the commissioner of this court to take proof and report concerning the net earnings, and that the defendant be required to pay into court all such earnings, and that same be applied to the payment of the coupons. By an amendment filed December 7, 1885, the word "exclusive" was stricken from before the word "knowledge" in the petition. The defendant filed its answer February 8, 1886, in which it denied that there had been any net earnings; that any demand had been made; and a denial that it had exclusive knowledge as to the net earnings. January 28, 1890, plaintiffs filed another amendment, in which they say: "It is true that all other sources of raising money of said first party, the Northern Division of the Cumberland & Ohio, had and has proved insufficient, and there are no net earnings from said Cumberland & Ohio Road or Company." The plaintiffs, January 26, 1891, filed an amendment, in which the allegation is made that all the coupons falling due since the institution of the suit, and up to that date, were unpaid, etc., "wherefore plaintiffs pray as in their original petition, . . . and that all the net earnings as they may hereafter accrue be applied to the payment of the coupons now due, and as hereafter fall due, and also to the payment of the interest on said coupons, from their respective maturities, and that any surplus net earnings be set apart as a sinking fund for the payment of the bonds as they mature." This was the last pleading filed in the case. Upon the issues thus formed, the action, after a reference to and a report by the commissioner, was dismissed by the chancellor. On appeal the judgment of the lower court was reversed, with directions to find for

plaintiffs on the coupons due up to June 30, 1890. The action has continuously since that time remained on the docket.

Treating the proceeding as one for an accounting for the purpose of raising a fund not only to meet the coupons then due, and such as might become due during the litigation, but also to create a fund to retire the bonds at maturity, the chancellor on the 21st of July, 1899 (the cause having remained on the docket pending certain appeals), referred it to the commissioner, with directions "to ascertain and report the net earnings of the defendant coming to it from or over the said Northern Division since the time of the last earnings reported herein, in report R. E. S. No. 2. . . . Said net earnings to be ascertained in the same way as in said report." The report of the commissioner, without reporting any finding as absolute, submitted for the consideration of the court four aspects of the proof: First, on the basis of excluding from operating expenses construction, rents, and taxes, the amount which plaintiffs ought to recover would be $139,961.90; second, upon the basis of construction, rents, and taxes, but deducting at the end of each six months period losses incurred in that period, it should be $128,431.76; third, on the basis of including rents and taxes, but excluding construction, it should be $54,637.21; fourth, including in operating expenses, construction, rents, and taxes, the finding should be for defendant. The chancellor, adopting the last view, dismissed the petition, from which judgment the plaintiffs appealed, and the case is now before us for review.

There is no difference of opinion as to the meaning of the contract. That a fund was to be raised from the net earnings of the appellee road to pay off the coupons, and the bonds themselves, if there was a sufficiency for the purpose,

stands agreed. What constituted net earnings, and whether there has been such, are the evidential propositions involved in this controversy. The appellee concedes that the net earnings were to be applied, but insists that there can be no recovery in this suit in its present status, because there have been no net earnings, but, if there has been, the action was properly dismissed, for the reason: First. There is no pleading which alleges (1) that for a period subsequent to the 1st of July, 1890, the net earnings of the Northern Division of the Cumberland & Ohio were insufficient to pay, in whole or in part, the coupons; (2) or that all sources of raising money of the Northern Division had proved insufficient; (3) that the net earnings of the Louisville, Cincinnati & Lexington had proved sufficient, and that appellee had collected them and failed to account for them. Second. That all matters now in litigation are *res adjudicata.* Third. If not *res adjudicata,* that Schmidt v. L. & N. R. R. Co., 95 Ky., 289, 15 R., 785, 25 S. W., 494, 26 S. W., 547, is to be followed as a precedent, and, under the principles therein announced, there have been no net earnings. Fourth. No cause of action is stated against the Louisville & Nashville.

. The appellee concedes that the pleadings up to 1891 were sufficient, but its contention now is that additional pleadings should have been filed, covering the time now in controversy; that appellants are in the position of a plaintiff without written pleading in a court where written pleadings are required. In this we do not concur. The allegations and the prayer for relief contained in the petition and in the amended petition of January 28, 1891, seek to recover on not only the coupons then due, but to compel the paying into court of the net earnings as they might thereafter accrue, to meet subsequent coupons, and to provide a fund to meet the bonds at maturity. The action is one for an accounting,

and the prayer that the case be retained on the docket for all purposes; the bonds then having only about eight years to run. It was asked that the money be paid into court for the equal benefit of all the bondholders. Such action is clearly within the lines of good equity pleading. Whether there had been net earnings could only be known to appellants from the reports that were to be furnished to them by appellee. Failing to furnish such reports, the information as to whether there had been such earnings was exclusively within the knowledge of appellee, and it did not devolve on appellants to aver that there were such earnings. All that was required was to set forth the bond, the coupons, aver non-payment, and ask for an accounting. This has been done, the prayer being laid in the continuendo. The averments in the pleadings that the net earnings of the Northern Division had proved insufficient, that all other sources of raising money of said Northern Division had proved insufficient and that sufficient earnings had accrued to the Louisville, Cincinnati & Lexington were sufficient, were not necessary averments in order to set forth a cause of action. These supposed conditions precedent are defensive matter. The appellee must pay if there is sufficient from any one or more or all the sources. If the appellants had averred that there was a sufficiency of the net earnings derived from the Louisville, Cincinnati & Lexington, would a denial to this have constituted a complete defense? All the resources were in lien, and, to have made the defense good, denials should have been made as to the insufficiency of the other sources. The appellee assumed to pay the bonds, and the Northern Division, in consideration of its so doing, turned over to it all of its franchises, rights, subscriptions, etc.; thereby denuding itself of every source of raising money. In fact, it had to be paid out of the gross

earnings $1,000 per annum to keep alive the organization.
No effort on the part either of the bondholders or the North-
ern Division was expected. All effort in that direction was
to be made by appellee. It was with it to make earnings
out of the Northern Division, and to use the sources of rais-
ing money of it. The verbiage of the writing is conclusive
on this point. The preposition "of," preceding the words
"the said Northern Division shall prove insufficient," etc.,
is used in its general and primary sense, "off," "from," "out
of," not in the obsolete sense, "by." The verb "prove" means
"after trial." It was the duty of appellee, to the extent
pointed out in the various writings, to pay the coupons. The
funds and means with which to do so were in its possession
and under its complete control. It devolved on it to make
the trial from the sources mortgaged to it. It undertook
to do so. It was not obligatory on appellants or on the North-
ern Division to take any step in that direction, nor is it
on them to aver the inability of appellee. Such seems to
have been the contemporaneous understanding of the parties.
As it appears in the statement of the case, the bonds were
issued and sold by the appellee. It therefore had full no-
tice of the contents, and, by the sale and receipt of the
proceeds, ratified the terms thereof, and was bound by omis-
sions, if any. The bonds do not pledge the net earnings of
the Northern Division, nor do they contain the supposed con-
dition "that if all other sources of raising money of the North-
ern Division prove insufficient," etc. The language in the
face of each bond is "that it and the other bonds, and the
coupons, are secured by . . . a first lien on the net
earnings of the Louisville, Cincinnati & Lexington, duly
pledged thereto, which may come to it by reason of business
coming to it over the lines of the Northern Division." The
appellee was the ostensible, if not the real, owner of the

bonds. They were printed, issued, and sold by it. It received the proceeds of sale, and appropriated them to an enterprise from which it anticipated the reaping of profits. There was neither gratuity nor friendship in the contract. The combination of these facts and circumstances constitutes a pledge on the part of appellee that, to the extent of its net earnings arising from business coming to it over the Northern Division, the bonds and coupons attached would be promptly paid. The holders of these bonds are innocent purchasers for value. The terms of the bonds do not put the purchaser on notice of a modification of its terms to be elsewhere found, nor is he given to understand that he must exhaust other securities before he can look to these found in the bonds. Upon any other theory than the one we hold, the bonds would have been worthless on the market. No purchaser could have been found for them, had it been suggested that payment could be obtained only through the labyrinthal process contended for by appellee, and the object of their issual would have been frustrated. The pleadings are sufficient to maintain and uphold a judgment for appellants if there have been net earnings.

The claim that the matters in issue are *res adjudicata* is not tenable. The case was heard below as to a different set of coupons from these in controversy when the decision in 95 Ky., supra, was rendered. The United States Supreme Court, in Nesbit v. Riverside Independent District, 144 U. S., 610, 12 Sup. Ct., 746, 36 L. Ed., 562, held that: "Each coupon is a separate promise, and gives rise to a separate cause of action. . . . So, while the promise on the bond and the coupons in the first instance are upon the same paper, and the coupons are for the interest on the bonds, yet the promise to pay the coupons is as distinct from that to pay the bonds as if the two promises were placed in different in-

struments and different paper." This view is sustained in
·Davis v. Brown, 94 U. S., 423; 24 L. Ed., 204; Cromwell v.
County of Sac, 94 U. S., 351, 360, 24 L. Ed., 195. These
enunciations are in harmony with the Kentucky authori-
ties. In Board of Commissioners v. Sutcliffe, 97 Fed., 270,
282, 38 C. C. A., 167, it was held that a judgment upon cer-
tain coupons did not prevent an action from being brought
upon other coupons of the same series; holding that estoppel
applied only as to points and questions actually litigated
and determined. In this action a new question is presented
—one that could not have been determined in the other—
and that is whether the cost of constructing the Shelbyville
Branch is capital or operating expense. An additional fact
is thereby put into the litigation, which makes it a new ques-
tion. "The litigation of the effect of one fact alone does
not preclude in a second suit an inquiry and determination
of that fact in conjunction with others." 144 U. S., 619, 12
Sup. Ct., 748, 36 L. Ed., 562. The opinion in 95 Ky., supra,
is not *res adjudicata*, under the Kentucky authorities, nor is
this court absolutely bound by it as precedent. Bank Tax
Cases; Barker v. Southern Construction Co., 47 S. W., 608,
20 Ky. Law Rep., 796; Tennessee Paving Co., etc., v. Barker,
59 S. W., 755, 22 Ky. Law Rep., 1069; L. & N. R. R. Co. v.
Offutt, 99 Ky., 427, 18 R., 303, 36 S. W., 181, 59 Am. St.
Rep., 467. In Barker v. Southern Construction Company, it
appeared that the appellee had recovered judgment below on
certain apportionment warrants issued to it in payment for
the construction of certain sidewalks in the city of Somerset;
the contract having been let under an ordinance of the city
council. The case was brought to this court on alleged er-
rors of the trial court, prominent among which were the facts
that no engineer had either been elected or appointed by the
council, that the work had not been done under the inspection

or supervision of the engineer, and that the plaintiff had not, before commencing the work, or at all, executed the bond required by the terms of the contract letting the work. This court reversed the case on all the points, and on the further ground that the statute was highly arbitrary, and should be construed strictly in favor of the lot holders. The mandate was not that the case should proceed on principles consistent with the opinion, but directed the absolute dismissal of the petition, which was done by the circuit court on the return of the case. That suit was brought on only a part of the work, the city having been laid off into sections, but the entire work was let under one and the same letting or contract. While the case was pending the residue of the work was completed. After such completion the Southern Construction Company transferred its claim for the entire work, including claims then in litigation, to the Tennessee Paving Company. The paving company, uniting with it the construction company, brought suit on all the warrants. A demurrer was filed to the petition because it failed to allege either that there was a city engineer, or that the contractor had executed the bond required. The circuit court, holding that it was bound by the opinion of this court in the Construction Company Case, sustained the demurrer and dismissed the petition, from which an appeal was taken to this court. So far as the action on the warrants that had been sued on in the first case, an estoppel was relied on as a complete bar, and the opinion of this court either as a bar or as a binding precedent as to the work subsequently done. This court, on a review of both cases, held that there was no estoppel, and refused to follow the principles announced in the Construction Company Case. This court on the last appeal held that it was not necessary that there should have been an engineer, that the failure of the contractor to ex-

ecute the required bond did not affect the validity of the warrants, and that the statute should be liberally construed to carry into effect the object intended by the statute, which was to beautify and ornament the cities of the Commonwealth. The reason given why the cause was not adjudicated was that the first one was heard on the merits, and the second on demurrer. It was a narrow, but sufficiently wide, fringe. It did, however, overrule every principle enunciated in the Construction Company opinion. In Louisville & Nashville Railroad Company v. Offutt, 99 Ky., 427, supra, we held that: "This court, on a second appeal in the same case, will treat the opinion of the superior court on the former appeal as the law of the case, whether that opinion be erroneous or not; but it would not be proper for the court to follow such an opinion unless the law as therein held applies to the facts in the record on a second appeal." The doctrine laid down in L. & N. R. R. Co. v. Offutt and the Construction Company cases is sound in principle, and, following them, we must hold that the "claim of matters determined" contended for by appellee is not available. The law on this point, if there be such, in 95 Ky., supra, does not apply to the facts of this case.

Full weight has been given in the consideration of this appeal to the able and exhaustive briefs of the learned attorneys for appellee; but the vice, as it seems to us, in the argument on this particular phase, is the assumption that we held in 95 Ky., supra, as a matter of law, that "taxes, rents, and cost of construction" were operating expenses. In that case, construing the opinion most favorably to appellee, this court only held that, on what was then before it, Report R. E. S. No. 2 most nearly approximated correct results. The court did not mean to be understood as holding that, under all and every state of case, these items were charge-

able to operating expenses. It is in proof that there are some kinds of construction, some kinds of rents, and some taxes that ought not to be so charged. If this be not true, then proof is useless. The parties will be bound by the manner in which appellee saw proper to keep his accounts, and by its view as to what is necessary to bring construction within the lines that make it chargeable to capital. There is no rule of law declaring what constitutes operating expenses. That is to be determined by the testimony as to each item of expenditure. It is a matter of evidence, and determinable like any other fact. There can, in this view be no sort of inconsistency in this court holding now, if the proof warrants, that these matters, or any of them, are not operating expenses, and its having held on a different state of facts, with different testimony, that they were of that description. In the view we have taken, it is not necessary that we should affirm or overrule 95 Ky., supra. If, however, that issue were presented, we should overrule so much of it as is supposed to hold that all descriptions of construction, rents, and taxes are operating expenses of a railroad.

As to the point that no pleading is filed against the Louisville & Nashville, it is sufficient to say that no judgment is sought against it. That it is not a party is due to its own successful resistance. If to be held responsible at all, it must be in the capacity of *dominus litis*. It has no ground of complaint that it has not been made a party.

That there have been sufficient earnings coming to appellee by reason of business coming to it from and over the said Northern Division to satisfy at least a portion of the coupons in suit admits of no doubt. The contract provides that appellee should make quarterly returns as to this, and would appropriate the net earnings for the purpose of meeting the interest as it fell due. In con⁴    ⁴ will be considered as

done which should have been performed. We must therefore treat these earnings as having been set apart and appropriated by the appellee at the end of the first six-months period as a fund to pay the coupons that had then matured, and so as to the other periods as they should successively arise. We are of the opinion that it would not be competent for appellee to make default, and then claim at a subsequent time that losses had occurred, and set the latter off against previously due coupons. It would be to allow it to take advantage of its own wrong. The sum so appropriated, on equitable principles, ceased, on such appropriation, to be longer the property of appellee. The contention of appellee on this point is not maintainable.

The appellants have not been guilty of laches, as claimed by appellee. The original action was instituted in 1885, and the amendment of 1891 in the prayer asked that the net earnings should be paid in as they might accrue or be found to exist at the termination of each and every six months. The proof shows that there were net earnings up to June 30, 1895, and from July 1, 1896, up to February 5, 1898. From July 1, 1895, to June 30, 1896, there were no net earnings; the proof in that respect showing that, even excluding construction, rents, and taxes from operating expenses, there had been no earnings. We not only hold that the earnings up to June 30, 1895, can not be swallowed up and absorbed by losses, if any, in the year above mentioned, but that such losses can not be set off against subsequent earnings.

On the subject as to whether "rents, taxes, and construction," as claimed by appellee, should be charged to capital or to operating expenses, the depositions of five witnesses were taken—four for appellants and one for appellee. Baird, Krebs, O'Brien, and Dunbar, for plaintiffs, swear that taxes (with a few exceptions) should be charged against capital;

also rents, with like exceptions; as also the construction account. Sewell, auditor for the Louisville & Nashville Railroad Company, the only witness for appellee, swears as pointedly to the contrary; basing the opinion alone on his own idea. Appellants' witnesses rely on, as sustaining their theory, the American Railway Association of Accounting Officers, the Interstate Commerce Commission, and the Louisville & Nashville Railroad up to 1894-95. That these parties are quoted correctly is not denied by Sewell. His deposition was taken after those of the appellants. In it he admits that such was the practice of the Louisville & Nashville up to the period mentioned. He also says there was a change made by that road in this respect. This change was made a short time before the extensive improvement on the Shelbyville Branch. That improvement was made to enable appellee to make a favorable lease to Chesapeake & Ohio Railroad Company. It is so extensive in its nature that there can be no doubt as to its expense being chargeable to capital and not to operating expenses. The cost of that work can not be deducted from gross earnings, as a part of the operating expense of the appellee. O'Brien says, speaking of the Shelbyville Branch: "It is an entirely different road, except so far as to the fact of the road existing. It is the same roadbed." This is corroborated by the other witnesses for appellants, and, as a matter of fact, is not disputed by Sewell, except his claiming that anything short of building a new road outright should be charged to operating expense. All of the witnesses are expert railroad men. Crediting each, which from their honorable positions we should do, we must declare that the preponderance on the point as to what constitutes operating expenses is with the four, rather than with one, especially when the four witnesses are indorsed by the Interstate Commerce Commission, the American Association

of Railway Accountants, and the Louisville & Nashville Railroad Company.

Entertaining these views, we are constrained to reverse the action of the lower court, with directions to set aside the judgment dismissing the petition, and to render a judgment for plaintiffs for the sum of $128,431.75, as of date February 21, 1903. A mandate will issue in accordance with this opinion.