## IN RE CURTISS.

PATENTS; FORMER ADJUDICATION; PATENTABILITY.

1. Where it is sought to apply the estoppel of a judgment rendered upon one cause of action to matters arising in a suit upon a different cause of action, the inquiry must always be as to the point or question actually litigated and determined in the original action, not what might have been thus litigated and determined. Only upon such matters is the judgment conclusive in another action.

2. The rule of estoppel by judgment will not be applied with the same severity in interference proceedings in the Patent Office as in cases at law and in equity, as in an interference the issues are made up by the officials of the Office, and not by the parties themselves, and the case is confined to the issues thus formed.

3. Where the unsuccessful party to an interference, which was decided adversely to him solely upon the ground that he was limited by his specifications and reduction to practice to claiming a device capable of skimming along the water at high speed, but not of rising into the air, while the counts of the issue called for a machine capable of rising from and alighting upon the water, filed a divisional application for a patent for a machine capable of traveling at high speed upon the water, without regard to its ability to rise from or alight upon the water, it was *held* that the award of priority in the interference was not *res judicata* of the question of patentability

on the divisional application. (Distinguishing *Blackford* v. *Wilder*, 28 App. D. C. 535, and *Re Marconi*, 38 App. D. C. 286.)

No. 1098. Patent Appeals. Submitted January 8, 1917. Decided March 6, 1917.

HEARING on an appeal from a decision of. the Commissioner of Patents rejecting claims of a divisional application for a patent.            *Reversed.*

The Court in the opinion stated the facts as follows:

This appeal is from a decision of the Commissioner of Patents rejecting six claims of a divisional applicaton for a patent on a machine supported jointly by air and water while at speed upon the water. The invention is sufficiently described for our purpose in claim 6, as follows: "6. In a machine adapted to be supported jointly by air and water while running at speed on the water, the combination of a main aeroplane supporting surface acted upon by the air so as to tend to lift the machine to lessen displacement of the machine when running at speed on the water, lateral balancing aeroplane surfaces to assist in controlling the machine while running at speed on the water, a main water-borne central boat structure adapted to support substantially the entire machine on the water, and, except for the aeroplane lift, constituting substantially the entire supporting element at all speeds of the boat structure on the water, relatively small horizontal balancing water engaging means located below the supporting plane and beyond each side of said boat structure, said balancing means being located above the level of the boat bottom and provided with surfaces inclined downwardly and rearwardly, adapted to be acted upon by the rush of water when the machine loses its lateral equilibrium, means for operating the lateral balancing aeroplane surfaces to create a difference of air lift to assist in controlling the machine at speed on the water, one or more elevator air planes, means for controlling the same to vary the angle of incidence of

the boat on the water, and an air propeller with means for driving the same to propel the boat at speed on the water."

The claims were rejected, not for lack of patentability, but because of a former adjudication in an interference in which appellant, Glenn H. Curtiss, was a party. *Janin* v. *Curtiss*, 45 App. D. C. 362. In that interference the application of Curtiss, of which the present one is a division, was involved. The issue there consisted of a single count, as follows: "A hydro-aeroplane comprising a main aeroplane supporting surface, lateral stabilizing aeroplane surfaces to create a difference of lift, a main water-borne central boat structure adapted to support the entire machine when on the water, and except for the aeroplane lift, constituting substantially the entire supporting element at all speeds so long as the boat structure is traveling in contact with the water, relatively small horizontal water balancing floats located below the supporting plane and beyond each side of said boat structure, said floats being located above the level of the boat bottom and provided with surfaces inclined downwardly and rearwardly, adapted to be acted upon by the rush of water when the machine loses its lateral equilibrium, and means for operating the stabilizing surfaces to create a difference of air lift."

The interference turned upon a single issue. The Examiner construed the count as broad enough to embody a machine capable of operating at high speed upon the water, but not capable of rising from the water and flying in the air. The Board of Examiners in Chief held the issue limited to a machine capable of rising from the water by its own power and flying in the air. The Commissioner of Patents agreed with the Examiner, reversing the Board. This court reversed the Commissioner, holding that "the issue calls for and describes a hydro-aeroplane, —a machine capable of rising from and alighting upon the water." In other words, we held that the invention there in issue, and of which Curtiss sought to establish a reduction to practice, was a flying machine capable of rising from and alighting upon the water. The interference turned on the question of reduction to practice of the invention in issue by Curtiss,

Janin claiming his filing date as a constructive reduction to practice.

Curtiss's case depended upon what was known as the Hammondsport experiment, where his machine demonstrated ability to skim on the water at high speed, but could not rise into the air. The latter function, we held, was called for by the issue, and was what Curtiss was aiming to accomplish on the lake at Hammondsport. Speaking of the object sought by Curtiss, this court said: "To determine whether this test was a reduction to practice of the invention for which Curtiss is now seeking a patent, it is important to consider his application. In the introduction to his specification he describes the invention as follows: 'My invention relates to improvements in heavier-than-air flying machines, and has reference particularly to a machine adapted to alight on the water and arise therefrom by its own power. Some of the features of the invention are, however, applicable to ordinary heavier-than-air machines.' This statement of the scope of his invention embodies in brief what he describes in his specification. His drawings disclose a flying machine, and of his fifty-one claims all but claim 38 call for a flying machine, and that claim calls for an aeroplane."

The present claims were rejected as *res judicata* in the light of our decision in the former case. The invention to which the claims of the issue are here directed is described in the application as follows: "This present divisional application is directed particularly to machines having a water-borne boat structure, air planes, and control devices so as to be capable of safe operation at high speed on the water, regardless of whether the machines are constructed so as to be able to subsequently rise from the water and fly in the air. The object of the invention claimed herein is to provide a machine having a boat structure for supporting a machine when at rest on the water, air planes acted upon by the air to help support the machine when operating at speed on the water, means including an aerial propeller for driving the machine at speed on the water, and means for balancing and controlling the machine when so operating. The invention consists in certain novel combinations that

are directed to operation of the machine on the water. The invention may be embodied and used in a machine of the character described, capable of operation at speed on the water only, or it may be embodied and used in one capable both of operation at speed on the water and of then rising by its own power from the water and flying in the air. The invention herein claimed is generic to machines capable of performing one or both of these operations. In either case, operation and control at speed on the water is attained in the same way."

*Mr. Wm. Houston Kenyon, Mr. S. Mortimer Ward, Jr.,* and *Mr. John P. Tarbox,* for the appellant, in their brief cited:

*Re Barratt,* 14 App. D. C. 255; 1899 C. D. 320, 87 Off. Gaz. 1075; *Blackford* v. *Wilder,* 28 App. D. C. 535, 1907 C. D. 491, 128 Off. Gaz. 1255; Ex parte *Booth,* 1891 C. D. 107, 56 Off. Gaz. 141; *Corry & Barker* v. *Trout,* 1904 C. D. 144, 110 Off. Gaz. 306; *Cromwell* v. *Sac County,* 94 U. S. 351, 24 L. ed. 195; *Drawbaugh* v. *Blake & Edison,* 1885 C. D. 7, 30 Off. Gaz. 259; *Re Fay,* 15 App. D. C. 515, 1900 D. C. 232, 90 Off. Gaz. 1157; *Horine* v. *Wende,* 29 App. D. C. 415, 1907 C. D. 615, 129 Off. Gaz. 2858; *Howlett* v. *Tarte,* 10 C. B. N. S. 813; *Re Marconi,* 38 App. D. C. 286; C. D. 1912, 483, 179 Off. Gaz. 577; *Nesbitt* v. *Independent District of Riverside,* 144 U. S. 610; 36 L. ed. 562; *New Orleans* v. *Citizens' Bank,* 167 U. S. 371, 42 L. ed. 202; *Phelps* v. *Wormley & McCullough,* 1905 C. D. 374, 118 Off. Gaz. 1069; *Russell* v. *Place,* 94 U. S. 606, 24 L. ed. 214; *Sarfert* v. *Meyer,* 76 M. S. Dec. 410; U. S. Rev. Stat. Sec. 4904.

*Mr. Wm. R. Ballard* for the Commissioner of Patents:

The rejection of these claims as *res judicata* is based upon the decisions of this court in *Blackford* v. *Wilder,* 28 App. D. C. 535, and the subsequent cases of *Horine* v. *Wende,* 29 App. D. C. 415; *Carroll* v. *Hallwood,* 31 App. D. C. 165; *Re Mar-*

*coni,* 38 App. D. C. 286; *New Departure Mfg. Co.* v. *Robinson,* 39 App. D. C. 504; and *Rusby* v. *Cross,* 42 App. D. C. 341. The very close parallel between the circumstances of the case at bar and those above cited, especially the case of *Horine* v. *Wende,* has constrained the office to apply the doctrine of *res judicata* here and to reject the claims of Curtiss without a second interference.

Under these decisions the Office, it is submitted, could not fail to reject the claims here presented. But in view of the fact that this case presents a situation where the loser of the interference appears on the record to be the first inventor of patentable subject-matter common to the two applications, the Commissioner deems it his duty to this court to state his conviction that a relaxation of the present rigid application of the doctrine of *res judicata* would in certain classes of cases result in a greater measure of justice.

Prior to the decision of this court in the Blackford-Wilder case the practice of the office was to refuse second interferences between the same applicants upon the same subject-matter except under unusual circumstances, as, for instance, when the record in the first interference made it clear that the losing party, although unable to prevail because of the character of the particular claims in issue, was the first inventor of a substantial part of the common subject-matter of the two cases. The principles upon which this practice was enforced are set forth quite clearly in the Commissioner's decision in *Corry and Barker* v. *Trout & McDermott,* 110 Off. Gaz. 306; 1904 C. D. 144, which was quoted by your honors in the decision in *Blackford* v. *Wilder,* supra.

The practice which has followed the line of decisions by this court above cited simplifies the Office procedure by establishing a uniform rule for all cases, but the difficulty of definition of an invention is so great that a rigid rule requiring a party to an interference to stake his entire rights on the correctness of the definition is certain frequently to work serious hardship. *Little* v. *Armstrong,* 232 Off. Gaz. 939.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

It will be observed that the claim here made is totally different from the issue involved in the interference. It is not an attempt to broaden the scope of the former claim, as in *Blackford* v. *Wilder,* 28 App. D. C. 535, and other cases cited by the tribunals below and by counsel for the government. The real test here is whether or not the granting of these claims to Curtiss would dominate the subject-matter upon which Janin prevailed in the interference. If so, the claims should be denied. *Re Marconi,* 38 App. D. C. 266. The claim in the interference, however, relating solely to a hydro-aeroplane capable of rising from and alighting upon the water by its own power, was awarded to Janin as the prior inventor, and is in no respect dominated by the present claims, relating solely to a device capable of traveling upon the water at high speed. If Curtiss should be found to be entitled to priority of the claims in issue, it would in no respect affect the prior rights of Janin acquired through the former interference. True, an attempt was made by Curtiss in the former case to claim both the flying and skimming features in the count of the issue, but we held, in the light of his specification and his attempted reduction to practice, that he should be limited strictly to a hydro-aeroplane; and this was the only question adjudicated.

The rule of *res judicata* or estoppel by judgment was announced in *Nesbit* v. *Independent Dist.* 144 U. S. 610, 618, 36 L. ed. 562, 565, 12 Sup. Ct. Rep. 746, as follows: "When the second suit is upon the same cause of action and between the same parties as the first, the judgment in the former is conclusive in the latter as to every question which was or might have been presented and determined in the first action; but when the second suit is upon a different cause of action, though between the same parties, the judgment in the former action operates as an estoppel only as to the point or question actually litigated and determined, and not as to other matters which might have been litigated and determined." The same rule has been applied by this court to adjudications made by the tribunals of the Patent

Office. Indeed, rule 127 of the rules of practice of the Patent Office expressly forbids the declaration of a second interference "upon a new application for the same invention filed by either party."

In *Blackford* v. *Wilder, supra,* the court stated the rule in sweeping terms when applying it to the facts before it, as follows: "To sum up: The parties are the same. The applications are the same, and disclose the invention of each issue. The constructions relied on, respectively, as evidencing conception and reduction to practice of the invention of both issues are the same. The fundamental facts of both cases are the same. Applying the well-settled principle of estoppel by judgment, before stated, it follows inevitably that the final decision in the first interference is conclusive, unless it can be made to appear that the question upon which the determination of the second case rests is one that neither was, nor could have been, presented and determined in the first case."

But these broad rules apply only where not only the cause of action is the same, but where the claim or demand in controversy is the same. The distinction is well stated in *Cromwell* v. *Sac County,* 94 U. S. 351, 24 L. ed. 195, where the action was upon four county bonds and four coupons thereto attached. Estoppel was claimed by a judgment in favor of the county in a prior action upon earlier maturing coupons attached to the same bonds between the same parties in interest. The court, speaking through Mr. Justice Field, said: "In considering the operation of this judgment, it should be borne in mind, as stated by counsel, that there is a difference between the effect of a judgment as a bar or estoppel against the prosecution of a second action upon the same claim or demand, and its effect as an estoppel in another action between the same parties upon a different claim or cause of action. In the former case, the judgment, if rendered upon the merits, constitutes an absolute bar to a subsequent action. It is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other ad-

missible matter which might have been offered for that purpose. * * * The language, therefore, which is so often used, that a judgment estops not only as to every ground of recovery or defense actually presented in the action, but also as to every ground which might have been presented, is strictly accurate, when applied to the demand or claim in controversy. Such demand or claim, having passed into judgment, cannot again be brought into litigation between the parties in proceedings at law upon any ground whatever. But where the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted upon the determination of which the finding or verdict was rendered. In all cases, therefore, where it is sought to apply the estoppel of a judgment rendered upon one cause of action to matters arising in a suit upon a different cause of action, the inquiry must always be as to the point or question actually litigated and determined in the original action, not what might have been thus litigated and determined. Only upon such matters is the judgment conclusive in another action."

There are compelling reasons why the rule of estoppel by judgment should not be applied with the same severity in interference proceedings in the Patent Office as in cases at law and in equity. In the latter instances the issues are made up by the parties themselves, with wide latitude for amendment to meet unexpected contingencies arising in the course of trial. In interferences the issues are made up by the proper official in the Patent Office, and the case is confined to the issues thus found. True, they are made from the applications of the respective parties, which, in a sense, constitute the pleadings in the case; but the issue, nevertheless, is the result of the view taken by the official of the case presented by the applications, and is conclusive on the parties.

Unlike a suit at law or in equity, the parties are limited in an interference to the specific issue or issues found by the Patent Office. The broad rule that all questions are *res judicata* which were, or might have been, determined in the former case must

be applied with reference to the limitations of the particular proceeding. It may often occur within the broad scope of a proceeding at law or in equity that matters which might have been determined, and which constitute estoppel in a second action, would have no application in an interference proceeding. In the former proceeding the whole purpose of the litigation may be examined to ascertain the issues which might have been determined in a prior suit, but in the latter the investigation is limited to the specific issue or issues pointed out by the Patent Office, as embraced within the interference. It follows, therefore, that only the matters that might have been presented relative to the particular thing or issue determined in the former interference can constitute estoppel in a second proceeding between the same parties relating to the same subject-matter.

This brings us to the narrow issue of the interference and the claims of the present divisional application. Do they present a single cause of action? We think not. In the interference, the sole issue upon which the case was decided was whether or not the claim called for a device capable of rising from and alighting upon the water. That was the only "point or question actually litigated and determined" in that action. The present claims relate solely to a device capable of traveling at high speed upon the water, without regard to its ability to rise from or alight upon the water. That question was not determined in the former case. Indeed, we held that it could not be under the count there in issue. The claims of the present issue were found to be patentable over the prior art, but were rejected solely upon the grounds herein stated. Though relating to the same structure, the specific claim found to have been made in the former case was for a different invention than that here involved; and, the cause of action being different, we are of opinion that appellant is not estopped to make the claims of the present issue.

The decision of the Commissioner of Patents is reversed, and the clerk is directed to certify these proceedings as by law required.　　　　　　　　　　　　　　　　　　*Reversed.*