CASE 6—ACTION BY PHILLIPS, TRUSTEE FOR BONDHOLDERS, &c., v. SOUTHERN DIVISION C. & O. R. R. Co., &c., FOR AN ACCOUNTING, AND TO ENFORCE MORTGAGE LIEN, AND ACTION BY THE SOUTHERN DIVISION C. & O. R. R. Co., v. THE L. & N. R. R. Co., TO ACCOUNT FOR NET EARNINGS UNDER A LEASE (2 CASES)—FEB. 19.

# Phillips v. Southern Division C. & O. R. R. Co., &c. (Two cases.)

### APPEAL FROM MARION CIRCUIT COURT AND APPEAL FROM TAYLOR CIRCUIT COURT.

JUDGMENT IN FIRST CASE FOR DEFENDANTS, AND PLAINTIFF APPEALS, AND IN SECOND CASE JUDGMENT REJECTING THE PETITION OF H. B. PHILLIPS, TRUSTEE, TO BE MADE A PARTY AND HE APPEALS—BOTH CASES REVERSED.

RAILWAY BONDS AND MORTGAGES—LEASE AND MORTGAGE CONSTRUED TOGETHER—SUIT BY TRUSTEE WITHOUT CONSENT OF BONDHOLDERS—RIGHT OF TRUSTEE IN MORTGAGE TO REQUIRE ACCOUNTING BY LESSEE—ABATEMENT PENDING SUIT—PARTIES TO ACTION.

Phillips v. Southern Division C. & O. R. R. Co., &c. (two cases).

Held: 1. A railroad company executed to another company a lease of its road, then only partially constructed, agreeing to execute its bonds, payable to the lessee, to raise money to finish the road, and to execute to the lessee a mortgage on the road to secure their payment; the lessee agreeing, before offering the bonds for sale, to guaranty their payment, and to return any of the bonds which might remain after reimbursing itself for expenditures in completing the road. It was further provided that the net earnings from the operation of the leased road should be applied to the interest on the bonds, and that at the end of three years after the completion of the road a per centum of the earnings sufficient for that purpose should be set aside by the lessee as a sinking fund for the payment of the bonds at maturity, "which sinking fund, is to be provided for in said mortgage." It was further provided that one-third of the remainder of the net earnings not necessary to pay the interest and the sinking fund should be retained by the lessee, and the other two-thirds paid to the lessor, but that, if the proceeds of the sale of bonds should not be sufficient to reimburse the lessee, then such surplus net earnings might be retained by the lessee and applied to such deficit. Soon after the execution of the lease the proposed mortgage was executed to trustees; the mortgage stipulating that if the mortgagor should fail to pay the bonds, or any of them at maturity, the trustees, or the survivor of them, should forthwith institute foreclosure proceedings. *Held*, that the lease and mortgage are to be construed together, as one instrument, and, as the survivor of the trustees did not represent bondholders alone, he was entitled upon the maturity of the bonds to institute foreclosure proceedings without the request or consent of bondholders, making the lessee a party for the purpose of requiring it to render an account of net earnings; and the lessee can not plead in abatement of the action that it is now the sole bondholder, and that the services of the trustee are not necessary.

2. It is no ground for abatement that the lessor has, since the institution of the action by the trustee, instituted an action against the lessee in another county for an accounting.

3. A provision of the mortgage authorizing the trustees to refuse to institute foreclosure proceedings until properly indemnified did not restrict or limit their rights in the matter of instituting suit, but was merely for their protection.

4. The action brought by the lessor and mortgagor after the institution of the action by the trustee should be dismissed, the relief sought by the two actions being the same.

Phillips v. Southern Division C. & O. R. R. Co., &c. (two cases).

5 A stockholder in lessor company is not entitled to be made a party to the action by the trustee on the ground that the lessor is seeking to assist the lessee to acquire all the property belonging to the lessor, and refuses to assert a claim against the lessee for net earnings, and that the trustee has no right to prosecute the suit; the fact being that the trustee is authorized to sue, and there being no allegation that he is not prosecuting the suit in good faith.

JUDGES DuRELLE, BURNAM, AND O'REAR, DISSENTING.

C. C. McCHORD AND PRYOR, O'NEAL & PRYOR, FOR APPELLANT.

H. W. BRUCE, E. W. HINES, WALKER D. HINES, W. C. Mc-CHORD, AND W. J. LISLE, FOR APPELLEES.

(No briefs in record.)

OPINION OF THE COURT BY CHIEF JUSTICE PAYNTER—REVERSING.

For convenience, we will call the Southern Division of the Cumberland & Ohio Railroad Company "C. & O." and the Louisville & Nashville Railroad Company "L. & N." The C. & O., a corporation, was authorized to construct a line of railway from Lebanon, in Marion county, to Greensburg, in Green county. It began the construction of the road, and did a considerable amount of grading, and bought some material necessary in its construction. Being without means to complete the road, it began to negotiate with the L. & N. to finish the construction of its line between the points named. The negotiations resulted in an agreement by which the L. & N. undertook the completion of the road. It was supposed that $300,000 would be required for that purpose. On September 2, 1878, the C. & O. executed a lease on its line of road to the L. & N., to run for a period of twenty-five years. At the time this was done, the parties regarded that it was necessary that the bonds of the C. & O. should be executed payable to the L. & N., amounting in the aggregate to

$300,000, to secure which the C. & O. agreed to execute and deliver to it a mortgage on its line of road between Lebanon and Greensburg, constructed and to be constructed, together with all its other property acquired and to be acquired for the purposes of the road.

The provisions of the lease relating thereto read as follows: "Third. The party of the first part agrees and binds itself to execute its bonds, in such denominations as it deems best, for $300,000 in the aggregate, payable to the order of the party of the second part, and to execute and deliver to it a mortgage securing the payment of said bonds and interest upon said railroad between Lebanon and Greensburg, constructed and to be constructed, together with all its other property acquired and now owned, and to be acquired for the purpose of said road, with its rights, franchises and privileges. Said bonds are to bear date 2d day of September, 1878, payable in twenty years after date, and to bear seven per centum interest, payable semi-annually. Fourth. Said bonds are to be delivered to the party of the second part [L. & N.], to be held as security for the payment to it of the sums expended by it in the construction of said railroad, and before offered for sale the party of the second part is to indorse and guaranty their payment, and, whenever the parties may be able to sell said bonds in the market at ninety cents on the dollar, a sufficient number and amount thereof shall be sold at that price as will reimburse the party of the second part its expenditures in the construction and completion of said railroad; but if, after reimbursing the party of the second part, there shall remain any of the said bonds unsold, they are to be delivered to the party of the first part and canceled. But if the party should not be able to sell said bonds at the price stated on or be-

fore the 1st day of December, 1878, then the party of the second part is to have the right to take such amount of said bonds at the price stated as will reimburse it in its outlays in the construction of said railroad, or the said party of the second part shall have the right to pledge said bonds to raise the amount to reimburse it for its cost of construction of said railroad.    Fifth. The net earnings realized by the party of the second part [L. & N.] by the operation of said railroad shall be applied— First, to the payment of the interest on said bonds as it becomes due [this was done]; second, at the end of three years after the completion of said railroad such a per centum of said earnings as shall be sufficient for that purpose shall be set aside by the party of the second part [L. & N.] as a sinking fund for the payment of said bonds at maturity, which sinking fund is to be provided for in said mortgage; and, third, one-third of the remainder of said net earnings, not necessary for use in the payment of said interest and sinking fund, shall be retained by the party of the second part [L. & N.], and it shall pay the other two-thirds to the party of the first part [C. & O.], and for the first three years after the completion of said road, if there should be a surplus of net earnings after paying the interest on the bonds, two-thirds of the surplus shall be paid to the party of the first part, and the other one-third retained by the party of the second part for and during said three years, but after the end of the three years the interest on the bonds and sinking fund are to be first paid, before a division of any of the net earnings between the parties; provided, however, that if the proceeds of the sale of said bonds should not be sufficient to reimburse the party of the second part the cost of construction of said railroad, then the net earn-

ings herein provided to be paid to the parties may be retained by the party of the second part and applied to the liquidation of the excess of the said cost of construction over the proceeds of the sale of the bonds, until all of such excess shall have been liquidated."

To enable the parties to carry out the provisions of the lease and their contract with reference to the completion of the railroad and the execution of bonds, a trust was created, and the plaintiff, H. B. Phillips and N. S. Ray, now deceased, were elected by the parties to act in that capacity, and the mortgage which was executed by the C. & O. was to them as trustees. The provisions of the mortgage which we deem necessary to quote read as follows: "(4) That the party of the first part will pay, in lawful money of the United States, or in the bonds aforesaid, to said parties of the second part or their said successors, on the 2d day of September in the year 1881, six thousand dollars, and the same sum for the next year thereafter, nine thousand dollars annually for the next three years, twelve thousand dollars annually for the three years next immediately succeeding the last-named period of three years, and eighteen thousand dollars annually for the next three years, twenty-four thousand dollars annually for the succeeding three years, thirty thousand dollars annually for the succeeding two years, and thirty-nine thousand dollars for the next year, being the date of the maturity of the bonds, as the sinking fund for the discharge of the said bonds at maturity, on the bonds so paid to the parties of the second part as a sinking fund shall be cancelled by the said trustees; and said trustees and said company shall keep separate registers of the canceled bonds, at all times open to the inspection of the holders of said bonds and the stockholders of the

company. But should said company pay to said trustees the money, instead of bonds, the trustees shall deposit the same in some depository in the city of Louisville, Ky., which shall be selected by them, and the president of said company and trustees shall, from time to time, apply said money so deposited to the redemption of said bonds in open or public market as can be obtained with the amount of money so paid to the said trustees as a sinking fund, provided that none of said bonds shall be so, purchased at a rate above par; and, if the trustees should not be able to purchase the bonds at or below par, then said company, on notice and request by the trustees, shall designate by lot so many of said bonds, by their numbers, as will, at par, equal the money on hand to be invested and the trustees shall give notice of their intention to redeem the same once a week in a newspaper published in the town of Lebanon and a newspaper published in the city of Louisville during the three months next immediately preceding the date on which the next payment of interest on the bonds may be due, and upon the delivery of said bonds to the trustees they shall apply the money on hand to their redemption; and interest on the bonds so designated shall cease on and after the day on which they shall have been so called in for redemption, if not presented on that day, and the bonds so redeemed by the trustees shall be disposed of in the same manner as is hereinbefore provided in regard to the bonds that may be paid by the company to the trustees, under the provisions of the mortgage; and all the bonds redeemed or designated for redemption as herein provided shall be reported by the company in each of its annual reports to the stockholders, and, if requested by the stockholders in meeting assembled, the canceled bonds shall be pro-

duced for inspection, or said trustees may invest said money on hand and such other securities as the party of the first part may from time to time approve, and any such investment or reinvestment shall belong to and be for account of said sinking fund, and the interest thereon arising shall be applied in augmenting the amount to be used in the redemption of the bonds; and the trustees may, with the agent of the party of the first part, call in and change any instrument belonging to said sinking fund other than the bonds of this issue, and this change of investment may be into bonds of this issue, if the trustees and the party of the first part so agree. (5) That in the event the said party of the first part shall fail for the space of ninety days to pay the coupons for the semi-annual interest on any of the said bonds as the same may become due after presentation and demand thereof, or any payment due said sinking fund, then and in that case the whole principal sum mentioned in each and all of said bonds and the coupons belonging thereto shall, at the option of a majority in interest of the holders of said bonds, forthwith become due and payable, and the lien hereby created for the security and payment thereof may at once be enforced; and thereupon (or on the failure to pay any such aforesaid bonds as they shall become due, or any payment due the sinking fund) said parties of the second part, their survivor, successor or successors, shall, upon a proper indemnification by the holders of a majority of said bonds to the trustees against the costs and expenses by them to be incurred, and on their request in writing, institute and maintain foreclosure proceeding in any court having jurisdiction, and have whatever is herein mortgaged sold and conveyed by the direction of the court; and the proceeds from said sale

of said property, rights and franchises, after deducting expenses incurred in and about said proceedings, the execution of this trust, and reasonable compensation to said trustees, their agents and attorneys, shall be applied —First, to the payment of all taxes, levies and assessments on said property, and any other proper charge or exemption not caused by the willful, personal misconduct of said parties of the second part, their survivor, successor or successors; and, second, to the payment of said bonds, or so many of them as shall be outstanding, together with all arrears of interest then due thereon (or any prior bond), passing over the surplus, if any, to said party of the first part, its successors or assigns, or, in case the same be not sufficient to pay all said bonds and interest, then they shall distribute the same ratably among the holders of said bonds; provided, that if said company shall at any time before a sale pay all semi-annual interest then matured on any of aforesaid bonds, and all said expenses, compensation, taxes, and damages, that then the principal and unmatured interest on such bonds shall not be deemed due by reason of any previous failure to pay interest, and no sale of property for said failure shall be made. (6) Should the party of the first part fail to pay said bonds, or any of them, at maturity, then the trustees, their successor or successors or survivor, shall forthwith institute and maintain foreclosure proceedings in any court as aforesaid, and have what is herein mortgaged sold by order of the court; and they shall apply the proceeds of the sale to the payment of such of said bonds and interest as then may be unpaid, and, if not sufficient for that purpose, then ratably amongst the holders of the bonds, after first paying out of said proceeds the expenses incurred in the foreclosure proceeding, the

execution of this trust, and reasonable compensation for themselves, their agents or attorneys." It is also provided in the mortgage as follows: "That the trustees shall be answerable for gross negligence and willful defaults only, and that the trustees may employ or advise with legal counsel, and that the proper expense thereof and all personal expenses of the trustees about the discharge of the trust, and all other reasonable and proper charges and expenses of the party of the second part, including their compensation, shall be paid by the party of the first part as they are incurred, or otherwise, out of the trust estate on which they are hereby charged; that the trustees shall not be required to act in the execution of these trusts except at their own option, unless requested in writing by the holders of the majority in interest of the outstanding bonds hereunder, nor then unless furnished with such funds as their counsel shall advise them are reasonably necessary and proper to enable them to commence proceedings, and also with a responsible indemnity or sufficient agreement to pay the current accruing expenses, obligations and liabilities which they may incur by reason of so acting, and their proper compensation in so doing; that they may employ agents or attorneys in fact to act for them whenever required to act themselves; and that all the covenants and agreements herein contained or implied may be specifically enforced by any court of competent jurisdiction."

On the day following the maturity of the bonds, his co-trustee, N. S. Ray, having died, the appellant, Phillips, as surviving trustee, instituted this action. In the petition as amended the facts with reference to the execution of the lease and mortgage and as to his powers thereunder are averred. It is also averred that the bonds

had matured; that the C. & O. never created the sinking fund provided for in the mortgage, nor were the bonds delivered to them in relation to the sinking fund as contemplated by the parties might be done; that none of the net earnings, or in fact any of the earnings under the lease, were paid to them, nor has the L. & N. ever accounted to them or to the C. & O. for any net earnings arising from the operation of the road under the lease; that the bonds were guaranteed by the L. & N. as provided in the lease; that they were sold, and in discharge of its guaranty the L. & N. had redeemed the bonds from the purchasers, except a bond for $500; that it held them as security for anything that might be due it growing out of the completion of the construction of the C. & O. as provided in the lease; that no net earnings had ever been accounted for; that they would probably amount to enough to reimburse the L. & N. for its expenditure in the completion of the road; that the stockholders of the C. & O. had not had a meeting for a great many years; that they were disposed to act in the interest of the L. & N.; that its president had been an employe of the L. & N. for the past twenty years; that there should be a settlement with the L. & N. growing out of the completion of the construction of the C. & O.; that it should be held to account for any net profits that might arise under the terms of the lease; and that if anything was due the L. & N. resulting from the transaction, the property should be sold to pay it.

The L. & N. filed a special and general demurrer to the petition as amended, and also filed an additional demurrer to it on the ground that there was a suit pending in the Taylor Circuit Court by the C. & O. against the L. & N. in which it sought the same relief as sought in this

action; it being admitted that the suit was filed in the
Taylor Circuit Court on February 9, 1899, the day before
the court sustained these demurrers and dismissed the
plaintiff's petition. It also filed an answer in the nature
of a plea in abatement, in which it alleged that it had
redeemed the bonds, that it was the holder of all except
one for $500, and that it did not desire to have this action
prosecuted by the trustees. At the time the court sus-
tained the demurrers it also sustained the plea in abate-
ment. Presumably, it was of the opinion that the petition
failed to state a cause of action, because it sustained a
demurrer to the petition. The question here involved is,
did Phillips, as surviving trustee, have the right to main-
tain this action? Were they vested with a naked trust,
or one imposing upon them active duties?

It is insisted by appellees (1) that, as the L. & N. is the
sole beneficiary of the trust, it has the right to control the
trustee; (2) that the trustee could institute a foreclosure
proceeding only on the request of a majority of the bond-
holders, and that the trustee represents only the bond-
holders.

1. It is proper to state what relation the lease and
mortgage sustain to each other, in determining the rights
of the parties thereunder. They were prepared about the
same time, and in the lease it was agreed that the mort-
gage should be executed by the C. & O. to secure the bonds.
They were about the same subject-matter, and the lease
refers to the mortgage. The rule is that when two in-
strumnts are executed as part of the same transaction
and agreement, whether at the same time or different
times, they must be construed together. In 5 Lawson,
Rights, Rem. & Prac., section 2315, the rule is thus stated:
". . . Where two or more instruments are executed at

the same time, relate to the same subject-matter, and one refers to the other, either tacitly or expressly, they are to be taken together, and to be construed as one instrument. Where two instruments are executed as parts of the same transaction and agreement, whether at the same or different times, they will be taken or construed together. . . ." In Schmidtz v. Railroad Co., 101 Ky., 441, (41 S. W., 1015), the lease and mortgage were somewhat of the same import as the lease and mortgage here, and they were construed together.

2. In order to determine whether the contract between the parties created an express trust, and imposed active duties upon the trustees, we will state some of the duties they were required to perform; (a) The contract required the creation of a sinking fund, to be paid to the trustees at the time and in amounts specified in the mortgage; and, when paid to them, they were to apply it to the redemption of the bonds. (b) They were to cancel the bonds when redeemed, and the net earnings under the lease were to be received by them and applied to the cancellation of the bonds. (c) As it was their duty to receive and apply the sinking fund and the net proceeds arising from the lease to the bonds, it follows, as the sinking fund was not created and the net earnings accounted for, that it became their duty to settle the trust, and thus ascertain the amount, if anything, that was due the L. & N. on account of the bonds which it held. (d) It was made their duty on the maturity of the bonds to forthwith institute an action to enforce the mortgage, which necessarily involved the ascertainment of the amount due under its terms. It seems to us that very important duties devolved upon these trustees,—duties which were

committed to them by the C. & O. and L. & N. under the contract creating the trusts.

3. It is urged that the trustees do not represent any one except the bondholders. To this proposition we do not agree. The trustees were selected, presumably, with reference to their capacity and responsibility. Both the C. & O. and L. & N. recognized that the engagement into which they entered could be best done by creating the trust and appointing trustees. They recognized that they could not to advantage deal with each other, but through the trustees named. They imposed certain duties and responsibilities upon them, requiring them to look after the issuing of the bonds, to receive certain money to be applied to their payment, and see that the net earnings under the lease were properly applied, and to do which involved a settlement of the accounts growing out of the operation of the road for twenty years under the lease. In Bridge Co. v. Douglass, 12 Bush, 721, in passing upon the question as to the relationship which the trustees sustained to the debtors and creditors, the court said: "They represent the debtors as well as the creditors, and in the institution and prosecution of the actions resulting in the judgment appealed from they discharged duties imposed on them as the agents of the parties in interest, including the railroad company."

4. The general doctrine is that, when there is a default in the payment of bonds secured by a mortgage, it be-comes the duty of the trustees to protect the bondhold-ers and to do whatever seems proper to secure their interest. In section 285, Short, Ry. Bonds, it is said: "From the usual terms of mortgages it follows that, unless the safety of the security is threatened by the mortgagor or by attacks from without, or there has been a default in

the payment of the bonds or the interest, the trustee has no active duties to perform, but is simply the depositary of the title to the property mortgaged. 'The actual possession of the franchise and the property remains in the railroad company, to enable it to discharge its duties to the public, and earn an income from which to pay its liabilities. But, when a default occurs, the duties of the trustee become active and important. He represents all the bondholders, and is under obligation to protect them, so far as the property in his hands in trust for them will enable him to do so.' The duties of a trustee, after forfeiture, become not only active and responsible, but critical and delicate. He must then elect between delay and action; between, on the one hand, taking possession of the road and its fixtures, where he is entitled to do so, and, on the other, delay and consequent further embarrassment, complication, and loss, or he must undertake the ulterior and final remedy of foreclosure. It is the sole or the first purpose of his office that he should act, and should exercise his wisdom and discretion upon the possible occurrence of the emergency of a default. He is selected with reference to his capacity and responsibility for this very contingency, both by the corporation and the *cestuis que trustent;* and neither of these parties has stipulated to deal directly with the other, but only with the trustee, as the responsible party." Elliott, R. R., section 508, 509, read as follows: (508) "Where the mortgage is made to trustees, they may sue to foreclose it without joining the bondholders. Where a bill in equity is filed by the trustees for the foreclosure of a mortgage, the individual bondholders are not necessary, nor, as a rule, even proper, parties to the suit. They may be admitted as parties, however, where the trustee is guilty

of misconduct or shows himself incompetent to properly execute the trust, or where he is shown to have interests adverse to those of the bondholders. If a part of the trustees refuse to act, the suit may be prosecuted by the remaining trustee or trustees, and those refusing to act may be made defendants. So, where one of several trustees dies, the surviving trustee or trustees may maintain the suit." (509) "In case the trustees neglect or refuse to bring a foreclosure suit, or the trustee's office becomes vacant, and there is no provision in the mortgage forbidding such a course, one of the bondholders may bring a suit on behalf of himself and all others who choose to join him to foreclose the mortgage for a default in the payment of the principal or interest of his bonds. Such neglect, refusal, or vacancy must be alleged and proved, or the court will refuse to grant relief. . . ." The C. & O. and L. & N. agreed and expressly stated in the mortgage that if the bonds were not paid at maturity the trustees should forthwith institute a foreclosure proceeding. In this case it would have been proper to have done so, because they had failed to effect a settlement with the L. & N. from which they could tell the condition of the accounts for the completion of the road, and the amount of net earnings which its operation had yielded under the lease. When the C. & O. and L. & N. selected the trustees they, in effect, agreed that they should adjust these matters of account between them, and, if it should become necessary to do so, it was their duty to institute a proceeding in equity for that purpose. As we have said, it is only where the trustees are guilty of misconduct or show they are incompetent to execute the trust, or where they are shown to have interests adverse to those of the bondholders, that they can be made parties

to a foreclosure proceeding. In line with that doctrine in section 21 of the Civil Code of Practice, which provides, "A . . . trustee of an express trust . . . may bring an action without joining with him the person for whose benefit it is prosecuted." By reason of the duties imposed by the contract under which the trustees are operating, it was proper in this case that the L. & N. should have been made a party defendant to the action. Although by the terms of this contract it was the duty of the trustees to institute this proceeding forthwith upon the default in the payment of the bonds. they could, by a provision in the mortgage, have refused to do so until properly indemnified. That provision was not intended to limit or restrict the rights of the trustees in the matter of instituting a suit, but simply a precautionary provision for the protection of the trustees in the event they deemed it proper to be indemnified before instituting a suit. There is not a word or line in the mortgage to the effect that the trustees can institute a foreclosure proceeding at the maturity of the bonds only on the condition that they are requested to do so by those holding a certain per cent. of the bonds. This idea is emphasized because there was such a provision in the mortgage with relation to a foreclosure proceeding upon a failure to create the sinking fund provided for in the mortgage, but no such provision as to a foreclosure proceeding after the bonds matured. If the bondholders ordinarily are not necessary or proper parties to a foreclosure proceeding by a trustee, it would certainly follow that they can not control the action of the trustee, so long as he is not guilty of misconduct, proves himself incompetent, or appears to have an adverse interest. The mere fact that some special stipu-

lations in the writing creating the trust may render it necessary to make a bondholder a party to the proceeding to ascertain the amount, if any, that he may receive on the bond so held, could not confer the right to control the proceeding instituted by the trustee. In fact, in such a case a greater reason exists why such one should not be permitted to control the action of the trustee.

One of the grounds of demurrer was that a suit was pending in the Taylor Circuit Court, wherein the C. & O. was plaintiff and the L. & N. a defendant, the object of which was identical with the purposes of this action; it being averred in that action that the net earnings have not been accounted for by the L. & N., and they are probably sufficient to pay all the bonds which it holds. It was filed on February 9, 1898, and on the following day a demurrer was filed in this action, based upon the pendency of that action. It was filed several months after this proceeding was instituted; and it certainly can not be seriously contended that, after the Marion Circuit Court had obtained jurisdiction of the parties, it could be ousted of it by reason of the fact that some of the parties to the action instituted another action in a different county for a like purpose. It might be here remarked that the filing of that petition shows that an action should be maintained for a settlement of the matters here involved. It sustains the position of appellee that there should be an adjudication as to the status of accounts, etc.

It is earnestly urged that, if this proceeding is allowed to be maintained, it will put the C. & O. or L. & N. to great expense in the matter of fees to the trustee and his attorney. That certainly is no argument against the sufficiency of the petition, or in favor of the right of the appellee to maintain its plea in abatement. The parties

to the lease and mortgage contemplated that it was pos-
sible that just such a condition would arise, which would
render this action necessary; that to administer the trust
and to enforce the provisions of the contract the trus-
tees would be entitled to compensation, and likewise the
attorneys which it might be necessary to employ. Hence
it was expressly agreed by the parties that this expense
was to be paid before anything else, out of the proceeds
of the mortgaged property. The parties to that contract
should not complain of the expense which may be in-
curred, for they had reason to believe such might be in-
curred, and provided for its liquidation. It is likewise
without reason to complain of the trustee proceeding to
do the very thing which the contracting parties made it
his duty to do, to-wit, to look to the collection of the fund
to pay the bonds, receive the net income for operating the
road under the lease, to cancel the bonds when paid, and,
if there was a default in their payment, to forthwith in-
stitute a proceeding like this one.

The argument of counsel for appellee, L. & N., is predi-
cated largely upon erroneous assumptions. It is contend-
ed that the mortgage does not authorize the trustees to
collect or sue for the net earnings. The lease and mort-
gage, construed together, expressly authorize the trustees
to collect the net earnings, and direct how they shall be
applied. By this contract the net earnings from the oper-
ation of the road are to be applied first to the payment
of the interest on the bonds, next to the establishment
of a sinking fund, and then one-third of the remainder
was to be retained by the L. & N., and the other two-thirds
was to be paid to the C. & O. However, there is a pro-
viso in the fifth clause of the lease to the effect that, if
the proceeds of the bonds should not be sufficient to re-

imburse the L. & N. the cost of construction, the net earnings were to be retained by it and applied to the liquidation of that excess of cost of construction. This proviso does not restrict the rights of the trustees to collect that part of the net earnings which were to be paid them under the contract. It therefore appears that the trustees alone were to collect the net earnings for specified purposes, and the L. & N. was not entitled to retain a part thereof on certain conditions, and the C. & O. not entitled to receive any part thereof, until after the demands of the trustees were satisfied. The mere fact that the maturity of the bonds was not precipitated upon the failure to create the sinking fund does not deprive the trustees of the right to now receive and apply the net earnings according to the terms of the contract. Although they were not paid at intervals as agreed by the parties, still they must be applied in the final settlement as the parties agreed they should be applied.

Again, counsel for appellee, L. & N., in addition to their contention that the trustee asks relief beyond the scope of his authority, assume the petition is insufficient because it failed to show any request by a majority in interest of the bondholders to institute the action. This assumption is made in the face of the plain language of the mortgage, which requires the action to be forthwith instituted by the trustees upon default in the payment of the bonds at maturity.

Counsel for appellee, L. & N., falls into another error when he says, in referring to the lease, "that Mr. Phillips was not a party to that instrument. His selection as trustee under the mortgage was not authorized or even contemplated when the lease was made. There was no need of a trustee. The parties dealt directly with

each other." It is true that the lease did not mention Mr. Phillips by name, nor does it provide that the trustees shall be selected; but it does provide that the mortgage shall be executed, and the contracting parties agreed upon and selected Mr. Phillips as one of the trustees, and imposed upon him exactly the same duties that would have been imposed if he had been mentioned in the lease. We must assume that it was in contemplation of the parties at the time the lease was executed that a mortgage was to be executed in the exact terms as the one under consideration; and it certainly is at variance with the acts of the parties to say that the trustees were not needed, and that the parties dealt directly with each other. The parties to the contract knew whether the trustees were needed, and they created a trust and appointed them to execute it. They did not deal directly with each other, except in the sense of negotiating the contract that was made; but certain duties were to be performed under that contract, and the trustees were selected by the parties as the proper instruments for performing them. It may be added here that the lease provides what money is to go to the sinking fund "provided for in the mortgage." The mortgage provides for the sinking fund. Under the terms of the mortgage the trustees were to authenticate the bonds, and it was expressly provided in each bond that it was entitled to the benefit of a "sinking fund as provided in the mortgage." It will be seen from the foregoing provisions of the lease, mortgage and bonds that the instruments are bound indissolubly for the purpose of determining the contract between the parties.

Our conclusion is that Phillips, as surviving trustee, is entitled to maintain this action; that the demurrers filed by the defendants to the petition should be overruled;

54 KENTUCKY REPORTS. [Vol. 110

Phillips v. Southern Division C. & O. R. R. Co., &c. (two cases).

that the demurrer to the plea in abatement should be sustained; that the court erred in dismissing the petition; that the suit brought by the C. & O. against the L. & N. in the Taylor Circuit Court should be dismissed, for the reason that substantially the same relief is sought in the Taylor county case, subsequently instituted, as sought in this case by the trustee.

### Russell Branch of the Case.

S. A. Russell presents his petition, and asks to be made a party to the action, averring that he is the holder of a large amount of stock in the C. & O.; that it is joining with the L. & N. in trying to assist the latter to acquire all the property belonging to the company; that it refuses to assert a claim against the L. & N. for net earnings under the lease; that, if they were ascertained, it would more than pay off the bonds which the L. & N. holds, etc. In addition to that it is averred that Phillips, surviving trustee, has no right to prosecute this suit, and is not entitled to expenses and fees for prosecuting the same, basing this claim upon the provisions of the lease and mortgage. In so far as he questions the right of Phillips, as surviving trustee, to maintain an action, his position is identical with that of L. & N. He avers substantially the same facts with reference to the net earnings, etc., as are averred by the trustee. There is no averment that Phillips is not capable of prosecuting this case to a proper determination, nor that he is not in good faith seeking to compel the L. & N. to account for the net earnings. If Phillips had refused to institute this suit, wherein exactly the same relief is sought which Russell seeks against the L. & N., the averment which he makes in his petition might have been sufficient to have enabled him to prosecute a

suit on behalf of the C. & O. upon its failure to do so, or
if it appeared that it was not in good faith trying to
compel the L. & N. to account for the net earnings of
the road under the lease.  We have held that Phillips,
as surviving trustee, is entitled to maintain this action
and he is prosecuting it with diligence; and as he seeks
exactly the same relief that Russell does, and if it is
granted, the stockholders of the C. & O. will profit there-
by to the same extent and in the same manner as they
would do if Russell were permitted to maintain his action,
under these circumstances, we are of the opinion that he
should not be made a defendant to the action.  It might
result in a conflict between the trustee and himself as
to the manner of conducting the suit, causing complica-
tions that would result to the prejudice of all parties con-
cerned.   Therefore we are of the opinion that Russell
should not be made a party defendant to this action.

The judgment is reversed on original appeal, and affirm-
ed on cross appeal of Russell, and remanded for proceed-
ings consistent with this opinion.

Judges DuRelle, O'Rear and Burnam dissent.