CASE 20.—ACTION BY A. L. SCHMIDT AS TRUSTEE FOR BONDHOLDERS OF THE NORTHERN DIVISION OF THE CUMBERLAND & OHIO R. R. CO. AGAINST THE L. & N. R. R. CO. AND OTHERS FOR AN ACCOUNTING, AS LESSOR.—February 21.

# Louisville & Nashville R. R. C. v. Schmidt

Appeal from Jefferson Circuit Court; (Chancery Branch, Second Division).

SAMUEL B. KIRBY, Judge.

Judgment for plaintiff, defendants appeal — Affirmed.

Railroads—Mortgages—Authority of Trustee—Actions—Right to Reimbursement—Persons Liable.—Where one railroad company executed to another a lease of its unfinished road, and also executed a mortgage thereon to secure bonds which it delivered to the lessee for sale to raise money to complete the road, the lessee executing a mortgage on earnings to the trustee for the bondholders, the three writings which were executed simultaneously must be read together as one contract; and hence, though the mortgage of the earnings when considered alone merely created a naked or dry trust, still, where by the other mortgage of the railroad which under the law then existing he could not do, his only remedy being by suit in equity, the trustee was authorized to maintain such a suit as trustee against the lessee road on behalf

of his trust as was necessary for the preservation of the estate, and entitled to be reimbursed from the bondholders for the necessary expenditure which he was required to make in the prosecution of such suit, and the lessee road as one of such bondholders was liable for its proportional share of such expenses, although the action was not for its benefit and contrary to its wishes.

HELM & HELM for appellant.

1. A trustee's rights and duties are defined by the instrument creating the trust, and he has none except those given, and those implied to carry into effect those given. An instrument which merely conveys to a trustee without imposing any duties or granting any rights creates a mere "naked trust." (Perry on Trusts, section 520, 521; New v. Nichol, 73 N. Y., 137.)

2. In a suit brought by a bondholder for himself and others united with him in interest against another—who is also a holder of some of the same bonds—to compel an accounting, while plaintiffs are entitled to have his expenditures including fees of counsel made a charge upon the fund recovered, the defendant is not chargeable with any part of thes eextraordinary costs.

(a) The fund recovered as of right:

(b) His interests being adverse to those of plaintiffs, and having employed counsel to resist the plaintiff's claim he cannot be said to be united in interest with the plaintiffs. (Thirwell v. Campbell, 11 Bush, 163; Bailey's Adm'r v. Barclay, 109 Ky.. 637; Doherty v. Cummins Adm'r, 50 S. W., 551.)

TRABUE, DOOLAN & COX, Attorneys for appellee.

We submit that the following propositions are beyond contro-versy:

1. The appellee A. L. Schmidt is the trustee of the entire mortgage and of the entire issue of bonds outstanding accrued thereby.

2. The bonds for which the appellee Schmidt is trustee were executed by the Northern Division Cumberland & Ohio Railroad Company and delivered to the Louisville, Cincinnati & Lexington Railway Co. and by it sold to various persons. All of these bonds to the extent of the authorized issue of $250,000.00 were secured by a mortgage executed by the Cumberland & Ohio Railroad, Northern Division, and also by a mortgage of the earnings of the L. C. & L. Ry. Co. and by a contract pledging such earnings in the lease from the C. & O. R. R. Co., Northern Division, to the L. C. & L. Ry. Co.

3. The mortgage of the C. & O. R. R. Co., Northern Division, contains a provision by which the C. & . R. R. Co. or its lessee, (L. C. & L. Ry. Co.) or assigns may redeem or cancel any of the bonds so as to reduce the mortgage debt. It is expressly provided that such debt may be reduced or cancelled pro tanto "by paying par and accrued interest to date of notice of redemption therefor" after due advertisement as required and further provides that if such redemption or reduction of the mortgage debt is desired the bonds intended to be cancelled or redeemed shall be called for in the order of their numbers, beginning at number one and following in numerical order.

4. The Louisville & Nashville Railway Company not only has not treated the bonds held by it as redeemed or cancelled, thus, pro tanto, reducing the mortgage debt and relieving the trustee of liabilities under the mortgage, but on the other hand, it has heretofore actively asserted rights in itself as the owner of these bonds as we propose to show by the published opinions of this court.

5. The appellees have sued in this case for the enforcement of a lien to secure an issue of $250,000.00 of bonds and coupons attached. If any of these bonds have been cancelled or redeemed either by the act of the parties or by the act of the law, it was the duty of the respondent to plead that fact in defence of this action.

### CONCLUSION.

The absurdity of the appellant's contention in this case will appear when we consider that they have not complied with either of the judgments of this court awarding the plaintiffs the recovery of fixed sums of money. After these judgments have been rendered they have undertaken to credit themselves as a bondholder. If they had paid into court the monies due them pursuant to these judgments there could be no shadow of a doubt that this court would have allowed the expenses which have been incurred as charges against the fund, and the Louisville & Nashville Railroad Company would then have stood on the footing of every other bondholder.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

After many years' litigation and great expense, A. L. Schmidt, as trustee for various holders of bonds

of the Northern Division of the Cumberland & Ohio
Railroad Company, appellants' lessor, finally com-
pelled of appellant an accounting for the earnings it
received from its lease of that company's road ac-
crued to July 1, 1890, and for the amount thereof,
to-wit, $90,053.34, appellee obtained judgment against
appellant as of March 21, 1898. The recovery was
had under certain mortgages upon the roadbed and
property of the Northern Division of the Cumberland
& Ohio Railroad Company and its earnings received
by appellant as lessee of the road. The sum thus
recovered, less a credit for 250 coupons and 24 bonds
of the Northern Division of the Cumberland & Ohio
Railroad Company which appellant then claimed to
own, was paid by it under rule into court and subse-
quently distributed. The order awarding the rule
under which appellant paid the money into court is
as follows: ''But the allowance of the said credit on
account of the 250 coupons, and on account of the
24 bonds, shall not be taken and held as an adjudica-
tion by the court herein that the said Louisville &
Nashville Railroad Company, as beneficiary under
the trust held by plaintiff, is exempt from or liable
for any part of the charges and expenses of the plain-
tiff trustee and said trust. If it shall hereafter ap-
pear upon the distribution of the fund herein that
said coupons should not have been paid in full, but
should have been paid pro rata with other coupons,
or that the amount allowed the Louisville & Nash-
ville Railroad Company on said 24 bonds is more
than the pro rata share of said bonds, then the amount
of excessive payment made upon said coupons or
upon said bonds shall be adjusted in the distribution
of the fund herein whenever the same shall be made,
so as to equalize the beneficiaries under the said trust

with the Louisville & Nashville Railroad Company as the owner of the 250 coupons and said 24 bonds.'' By a subsequent ruling of the court, an accounting for earnings from the same was required of appellant from the year 1890 to the year 1898, and, after much delay in the lower court and an appeal to this court (see Schmidt v. C. & L. R. C., 119 Ky. 287, 27 Ky. Law Rep. 21, 84 S. W. 314), appellee obtained judgment against appellant on March 1, 1905, for $128,431.75, with 6 per cent. interest from February 2-, 1903.   When appellant was called upon to settle this judgment, it amounted to $144,371.36, and, in addition, there was due appellee as ordinary costs in the action $523.10.

In settling this judgment appellant claimed the right to retain and did retain $11,549.70 on account of 20 bonds of the Northern Division of the Cumberland & Ohio Railroad Company it owned, and which it insisted should be paid out of appellee's recovery. These bonds amounted to twenty 250ths of the amount recovered, and, after deducting the $11,549,70, appellant paid appellee $133,344.76.  When the payment was made, the lower court entered the following order: ''The plaintiff claims that the amount of $133,344.76, this day paid in by the Louisville & Nashville Railroad Company, is not in full of plaintiff's claim under the judgment herein rendered on March 1, 1905, and this action is retained on the docket for the purpose of hereinafter by proper proceedings determining that question and any other questions not heretofore finally disposed of.''  Later appellee filed in the court below his affidavit setting forth the items and amounts of extraordinary costs, in the matter of attorney fees, commissioners' fees, and other necessary expenses he was compelled to

incur in the prosecution of the claims of his cestuis que trust, and asked a rule against appellant requiring it to pay into court the amount it retained when it paid over the $133,344.76, or enough thereof to pay its (appellant's) proportion of the extraordinary costs and expenses set forth in appellees' affidavit. By its response to the rule, appellant denied any liability on its part for the costs and expenses sought to be recovered, and presented various reasons for its unwillingness to pay them; the principal ones being that appellee Schmidt was given no authority, express or implied, by the instrument making him a trustee to bring or maintain the action in which such costs were incurred, that the interests of the trustee and his coplaintiffs all the while were adverse to those of appellant, and that throughout the litigation appellant was represented by counsel of its own choosing. The response of appellant was held insufficient, the rule made absolute, and judgment entered compelling appellant to pay the costs claimed under the rule, amounting altogether to $8,901, with 6 per cent. interest on $6,670 thereof from June 30, 1900, and like interest on $2,231 thereof from March 1, 1905. Appellant complains of that judgment, and by this appeal seeks its reversal.

The several items embraced in the aggregate of costs for which appellee was given judgment appear to be correct charges, and such in amount as should be apportioned to and accounted for by appellant. We find in the record an opinion written by the judge of the circuit court which sets forth his views upon the questions of law arising on the rule and response supported by abundant authority. A careful reading of the opinion convinces us of the soundness of the conclusions therein expressed, for which reason, and

because it aptly expresses our views upon the questions involved, we adopt and make it a part of this opinion.  The opinion is as follows:

"In support of defendant's response to the rule, it is earnestly contended that the mortgage of the earnings does not impose any duty upon the trustee and under it he had no authority to sue as trustee alone, and that the instrument merely created a naked or dry trust.  From this viewpoint, it is urged that the action was maintained by the bondholders and by Schmidt in his individual right as a bondholder associated with other bondholders, and as the proceeding was not for the benefit of the defendant, and was contrary to its wishes, the rule underlying the case of Thirwell's Adm'r v. Campbell, 11 Bush, 163, is here applicable.  Counsel in this contention has fallen into the error of considering the mortgage of the earnings by itself, and not in connection with the other contracts and deeds made by the parties contemporaneously.   The mortgage of the earnings standing alone would indeed create only a naked trust in Speed, or Schmidt, his successor, but the Court of Appeals has said in L. & N. R. R. Co. v. Schmidt, 112 Ky. 721, 23 Ky. Law Rep. 2097, 68 S. W. 639: 'It has been held by this court several times that these papers executed contemporaneously, not only for the benefit of the lessor and lessee, but also for the benefit of the bondholders, must be read together as one contract'—citing four previous decisions of the court upon these same contracts to the same effect. See, also, Phillips v. C. & O. Ry. Co., 110 Ky. 33, 60 S. W. 941, 22 Ky. Law Rep. 1530.

"Looking, therefore, to the other instruments and particularly to the other mortgage made to the same trustee, dated July 2, 1879, we find many important

duties devolving upon the trustees in the event of a default in the payment of the interest upon the bonds. By that instrument the trustee is authorized, after such default in the mortgage, to enter upon and take possession of the railroad, and its franchises and property, and operate the road, or under certain circumstances sell the property. Under the law of this State existing at that time and now in force, the mortgagee could not take possession, but was compelled to enforce his lien by a suit in equity. A fair construction of that instrument made the trustee the active and responsible representative of the bondholders, and he was under said deed, by implication, clothed with authority to institute and conduct any suit for or on behalf of his trust as might become necessary for the preservation of the estate committed to him, or for the benefit of his cestuis que trust, the bondholders. The mortgage of the earnings was an addenda to the original mortgage, and gave the bondholders additional security, and must be read with the mortgage of July 2, 1879. An examination of this record shows that, although the trustee Schmidt formally associated with him some of the holders of the bonds in the institution of the proceedings and sued alone in his own right as a bondholder, he has, nevertheless, throughout this long litigation prosecuted the action as trustee and recovered as such. The other bondholders associated with him formally in the petition have not been seen or heard from so far as the record before me shows since the filing of the petition, and from start to finish the trustee has borne the heat and burden of the contest. The respondent or defendant resisted the efforts of the trustee as lessee of the mortgagor, and not as bondholder. If this controversy had been between the trustee and a

bonholder for an adjustment of some difference between them, then the action would have been what is characterized in equity practice as litigious, and only ordinary costs would have been allowed, but the controversy was not between the trustee and a bondholder. It was between the trustee, seeking to carry out the provisions of the trust, against one in open hostility to the trust, seeking to defeat its provisions, although itself a small holder of bonds and interest coupons.

"The entire question at bar seems to have been thoroughly gone into and disposed of by the Court of Appeals in the case of Phillips v. Southern Division of the C. & O. Ry. Co., 110 Ky., 33, 22 Ky. Law Rep. 1530, 60 S. W. 941. The defendant in this proceeding was a defendant owning all the issue of bonds, amounting to $3,000, except $500 thereof, and one of the contentions made was that the action should not be allowed, as 'it will put the Cumberland & Ohio or Louisville & Nashville Railroad to a great expense in the matter of fees to the trustee and his attorney.' Answering this, the court said: 'That certainly is no argument against the sufficiency of the petition, or in favor of the right of appellee to maintain its plea in abatement. The parties to the lease and mortgage contemplated that it was possible that just such a condition would arise, which would render this action necessary; and that to administer the trust and to enforce the provisions of the contract the trustees would be entitled to compensation, and likewise the attorneys which it might be necessary to employ. Hence it was expressly agreed by the parties that this expense was to be paid before anything else, out of the proceeds of the mortgaged property. The parties to that contract should not complain of the

expense which may be incurred, for. they had reason to believe such might be incurred, and provided for its liquidation. It is likewise without reason to complain of the trustee proceeding to do the very thing which contracting parties made it his duty to do, to wit, to look to the collection of the fund to pay the bonds, receive the net income for operating the road under the lease, to cancel the bonds when paid, and, if there was default in their payment, to forthwith institute a proceeding like this one.' The only difference between this case and the case there decided was that in that mortgage it was expressly provided for compensation to the trustee and for his costs. In this case the deed is silent as to the compensation for the trustee or the reimbursement of costs and expenses. When the contract creating the trust was executed, there arose an implied obligation on the part of holders of bonds that the trustee should be reimbursed any necessary expenditures he might be required to make in the discharge of the duties cast upon him as such trustee. It formed a part of the consideration between the trustee and his cestuis que trust, and bound the holder of each bond or interest coupon. The recovery was by the trustee and for the trust estate, and the money withheld by the respondent as the owner of the bonds was a part of the recovery, and it should bear its proportion of the costs. The response is adjudged insufficient and rule made absolute.''

Judgment affirmed.

BARKER, J., not sitting.