## City of Covington v. Schlosser.
## City of Covington v. Mason.
## City of Covington v. Conners.

(Decided February 1, 1911.)

## Appeals from Kenton Circuit Court
## (Crim. Com. L. & E. Division).

1.  Municipal Corporations—Local Assessments—Corner Lots.—
    Under a statute providing that a city had the right "to improve
    its streets or other public ways at the cost of the owners of
    ground fronting or abutting thereon," but that the cost of such
    improvements should not exceed one-half the value of the ground
    after the improvements were made, excluding the value of build-
    ings thereon, the city had authority to assess against the owner
    of a corner lot an amount not exceeding one-half of its value for
    the improvement of each street independent of the charge against
    the other street.

2.  Sewers.—Sewers are not included in the words, "streets or pub-
    lic ways;" and the limitation upon the cost of improving streets
    or public ways does not include sewer construction. For this,
    an additional charge could be made under a statute authorizing
    an assessment not exceeding one dollar per front foot of the
    abutting property for the construction of sewers.

3.  "Streets and Other Public Ways."—Are words of large meaning
    in municipal affairs and are often used interchangeably. Each
    may be said to include sidewalks, curbing and gutters, as well
    as that part of the city commonly spoken of as a street, to dis-
    tinguish it from a sidewalk; but they do not include sewers, un-
    less the intention so to do is clearly expressed in the statute.

4.  Improvements.—A sewer is a municipal improvement. Sewers
    are underground improvements, while streets and public ways
    are surface improvements. One is used to carry off the water,
    filth and refuse, while the others are used to travel on. And
    where the statute fixes a limitation upon the cost of "improve-
    ments," sewers will be included.

5.  Trustee of an Express Trust—Bondholders.—Where municipal
    improvements were made upon the ten-year installment plan,
    and bonds covering the cost of the improvements were issued
    and sold by the city, the bondholders were not proper or neces-
    sary parties to a suit by the lot owner against the city to enjoin
    the collection of the assessment.

6.  Bondholder—Right to Intervene.—If it was made to appear that
    the city was suffering the rights of bondholders to be prejudiced,
    or was not taking proper action to protect their interests, the
    court should permit the bondholders to come into the case for
    the purpose of asserting their rights.

7.  Estoppel—Void Assessments.—Where an assessment for local
    improvements is in excess of the statutory authority allowing the

assessment to be made, the property owner is not estopped by his acquiescence or conduct from attacking the validity of the assessment in excess of the authority to make it. The excess assessment was void and unenforcible from the beginning.

JOHN E. SHEPHARD for appellant.

WALKER C. HALL and HALL & ADAMS for appellee Schlosser.

LESLIE T. APPLEGATE and LEWIS L. MASON for appellees Mason and Conners.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

These three appeals presenting substantially the same questions were heard together and may be disposed of in one opinion.

The appellees were the owners of corner lots in the city of Latonia during the time it was a fourth class city, and these lots were charged with the cost of sewer, street and sidewalk improvements made and constructed by the city of Latonia under the ten year bond and installment plan. In 1909 Latonia was annexed to the city of Covington, a city of the second class, and the latter city thereby became invested with all the authority in the collection of these local assessments that the city of Latonia possessed before the annexation. Thereafter, the appellees brought these equitable actions against the city of Covington to restrain it from collecting assessments against their respective lots for sewer, street and sidewalk improvements, in excess of one-half the value of the lots. They averred that the charter of the city of Latonia limited the amount that might be assessed against each lot and that without authority so to do it had assessed against their respective lots for these improvements an amount in excess of the sum allowed to be assessed by the statute. The city in its answer set up that as the lots were corner lots, the city of Latonia had the authority to charge them with the cost of improving each street they abutted on in an amount not exceeding one-half of the value of the lots, and in addition thereto with the cost of sewer improvements. It further insisted that there was a defect of parties, and also that the appellees were estopped from bringing these actions.

The cost of the improvements, as well as the value of the lots being practically agreed on, the lower court held that the assessment on account of the improvement of both streets for sewers, sidewalks and streets could not exceed one-half the value of the lot. It was further ·

ruled that there was no defect of parties and that the appellees were not estopped to question the validity of the assessments. From the judgments entered in accordance with these. rulings, the city appeals.

The sections of the Kentucky Statutes applicable to the questions relating to the amount of the assessments are section 3578, reading:

"No city of the fourth class, by virtue of any authority it has to improve its street or other public ways at the cost of the owners of ground fronting or abutting thereon, have authority to charge the ground or the owner thereof on account of such improvements with more than one-half the value of such ground, after the improvement is made, excluding the value of buildings and other improvements upon the property so improved."

The sewers were built under authority of subsection 9 of section 3490, providing that the city had the right:

"To construct sewers along or under any of the streets, alleys or highways of the city, and may assess the entire cost, including the intersections, of constructing the same, to an amount not exceeding one dollar per front foot of the abutting property, upon the lots and lands bounding or abutting upon said streets, alleys or highways in, under and along which the sewers shall have been constructed; the cost of the construction of sewers not exceeding said sum of one dollar per front foot of the abutting property, shall be apportioned equally on the said abutting lot owners according to the front or abutting feet. *   *   *"

Sections 3102 and 3105 of the Kentucky Statutes, relating to second class cities, contain substantially the same provisions in relation to assessment for street and sewer improvements as do the sections relating to this subject in the charter of cities of the fourth class.

Counsel for appellees insist that when the city has assessed a corner lot for the improvement of the street or public way on either street in a sum equal to one-half the value of the lot, it is thereby estopped from assessing against the lot the cost of improving the street or public way on the other street, and that the charge for constructing sewers is to be treated as a part of the improvement of the street or public way in determining the amount that may be assessed. While counsel for the city contends that the city has the power to charge a corner lot with the cost of street and public way improvements on each street to the extent of one-half the value of the lot; and in addition thereto with the cost of sewer

construction. It will be observed that the issue between the parties is plainly defined and that the proper solution of the questions presented depend on the construction of the foregoing statutes under which the assessments were made. If A. owns a corner lot fronting 100 feet on B. street and 100 feet on C. street, it is evident that A. receives the benefits, whatever they may be, that grow out of the fact that his lot abuts on two streets. It may be that this fact in some instances will not add anything to the value of the property, but whether this be so or not, it is nevertheless an undeniable proposition that his lot fronts on two streets, and so when the city comes to improve B. and C. streets, it has the right to charge A. with the cost of the improvement of each of these streets. This proposition counsel for appellees do not question, but insist that the assessment against the lot for both streets can not exceed one-half the value of the lot, without buildings or other improvements thereon. If this contention were sound, it would follow that if a corner lot abutting on B. and C. streets without any buildings thereon was worth, to illustrate, $200, and the improvements made on B. street assessed against the lot cost $100, that the city could not charge this lot with any part of the cost of the improvements on C. street. The result of this would be that A. while getting the benefit of the improvements on C. street, would be exempt from liability from any part of their cost. The further result would be that if D. owned a lot that abutted on C. street 100 feet, adjacent to A.'s lot, he must bear his share of the burden of the improvement of that street, while A. although having the same frontage on C. street and enjoying equally with D the benefit of the improvements, would not be taxed with any part of its cost. It seems to us that this would be an unjust discrimination against D. and in favor of A. The theory upon which these local assessments are made is that all lots fronting on the same street shall bear their proportionate part of the cost of the improvement of that street, and we are unable to perceive why A. should be exempt from this liability merely because his lot has been assessed to pay the cost of improvements on another street upon which it abuts. Nor do we find in the statute anything that would justify us in so holding. The statute provides that the city shall have the power to "improve its streets or other public ways at the cost of the owners of ground fronting or abutting thereon." It makes no distinction between corner lots and other lots. But, if, in the illus-

tration we have mentioned, A was exempt from the cost of improving C. street, it is plain that the express purpose of the statute to charge owners of ground fronting on streets with the cost of improvements would be defeated and A. would receive the same benefits and advantages as other owners fronting on C. street, without bearing any of the burdens. The fact that one street is improved at a cost not exceeding one-half the value of the lot does not deny the city the right to charge the cost of improving the other street against the lot to the extent of one-half of its value, as each street is to be treated separately and entirely independent of the other street. The limitation upon the amount of the assessment applies only to the improvement of each street upon which the lot fronts. In no other way can the intention of the statute be caried out or equal justice be done between lot owners. In some instances, perhaps many, this may result in charging corner lots with improvements greatly in excess of one-half their value, but this condition is brought about by the location of the lot, and the burden is imposed because the lot enjoys the benefits of two streets and, therefore, should be charged with the improvement of each of them. The principle we have announced was virtually settled in Rich v. Woods, 118 Ky., 865, where it was said:

"A lot fronting on two streets has more advantages, and consequently more value, than if it fronted on one only. As equality of public burdens is a cardinal consideration in their imposition, it must follow that the lot that gets twice as much advantage from a public improvement as another must pay twice as much of the cost of the improvement as the latter. * * * If this lot then fronts on two or more streets, each of which must needs be improved as a whole, or for a considerable distance passing his property, he must contribute ratably with his neighbors in doing the work, although as a matter of fact some part of the work can not be shown to be of actual and direct benefit to his abutting property."

And also in Anderson v. Bitzer, 20 Ky. Law Rep., 1450, where it is said:

"It is insisted that appellants' property fronts on Chestnut street and not on Sixth street, as their improvements are on Chestnut street. Their lot is a corner lot, and under the statute the location of the improvements is immaterial. The corner lot must be charged with its proportionate share of the sidewalk on both streets." To

the same effect is Meyer v. City of Covington, 103 Ky., 546; Page & Jones on Taxation by Assessments, sec. 561.

We therefore conclude, First: That when a corner lot is assessed for the cost of "improving the streets or other public ways" upon one street upon which it abuts, that the cost of this improvement is not to be considered in estimating the charge that may be made against the lot for improving the other street on which it abuts. But the cost of improving each street, independent of the other, cannot exceed one half the value of the ground, after the improvement is made, "excluding the value of the buildings and other improvements upon the property so improved." Second: That when such a lot is improved on one street, the amount that may be charged against the lot for improving the other street is to be estimated on its value after both streets have been improved. In other words, if the value of a corner lot after the improvement of A. street upon which it abuts is $600.00, then it may be assessed for the improvement of this street $300.00; and if the improvement of B. street upon which it also abuts will increase its value $200.00, then its value for the purpose of estimating the charge that may be put on it for the improvement of B. street is to be estimated at $800.00.

The next question is, can a lot be assessed with the cost of building sewers in addition to the charge against it for the improvement of "streets or other public ways," and without reference to the limitation imposed in the statute treating of streets and public ways, or, is the cost of sewers to be included in estimating the total amount that may be charged against the lot for street and public way improvements. It will be observed that section 3578, supra, limits the assessment for the cost of improving "streets or other public ways" to one half the value of the ground after the improvement is made. Naturally the first question that suggests itself is, are sewers included in the expression "streets or other public ways." If they are, of course the limitation provided in section 3578 applies to sewers; on the other hand, if they are not, the limitation does not apply. The statute treats of streets and public ways in one section and sewers in another. A different standard is applied to each. In fact, there is wide difference between these municipal improvements. Streets and other public ways are words of large meaning in municipal affairs, and are often used interchangeably. Each may be said to include

sidewalks, curbing and gutters, as well as that part of the city commonly spoken of as a street to distinguish it from a sidewalk. Webster's Dictionary, title "streets"; Bouvier's Law Dictionary, title "streets"; Cyc. Vol. 28, page 832; Page & Jones' Taxation by Assessment, Vol. 1, sec. 324. But the words "streets or other public ways" would not include "sewers" unless it was clear that the statute so intended. Sewers are underground improvements, while streets and public ways are surface improvements. One is used to carry off the water, filth and refuse, while the others are used to travel on. In view of this well recognized distinction between streets, sidewalks, gutters and public ways, on the one hand, and sewers, on the other, we think that the legislature in adopting section 3578 did not mean to include sewers in the expression "streets or other public ways." And this view is confirmed by the fact that sub-section 9 of section 3490, supra, treats of sewers in a class by themselves,— the authority being given "to construct sewers along or under any of the streets, alleys or highways of the city" and to assess the cost of the same "to an amount not exceeding one dollar per front foot on the abutting property." Evidently, in view of the general and common understanding of the difference attaching to the meaning of the words "streets or other public ways" and "sewers," if the legislature had intended that the limitation upon the cost of streets or other public ways should apply to sewers, it would have mentioned sewers in connection with streets or other public ways or have used the word "improvements" in place of the words "streets or other public ways." In view of the separate manner and connection in which these different improvements are treated, we conclude that the legislature did not mean to apply the limitation in section 3578 to sewers. We are further confirmed in this opinion by section 3560 of the Kentucky Statutes, a part of the charter of fourth class cities, which provides that "public ways as used in this act shall mean all public streets, alleys, sidewalks, roads, lanes, avenues, highways and thoroughfares." In this definition of public ways sewers are not mentioned. Therefore, in addition to the cost of improving the streets and public ways that may be imposed as before indicated, a charge not exceeding the amount fixed in sub-section 9 of section 3490 may be put upon each lot for the construction of sewers; and if it is a corner lot, it must bear the burden of sewer improvements on both streets on which it abuts.

Our attention is called by counsel for the appellees to the case of City of Cincinnati v. Conner, 55 Ohio State, 82, as supporting their contention that the limitation upon the cost of improving streets or other public ways includes sewers. But this case does not support counsel in the construction contended for. In that case the statute provided that:.

"In cities of the first grade of the first class, and in corporations in counties containing a city of the first grade of the first class, the tax or assessment especially levied or assessed upon any lot or land for any improvement shall not, except as provided in section 2272, exceed twenty-five per cent. of the value of such lot or land after the improvement is made, and the cost exceeding that per cent. shall be paid by the corporation out of its general revenue" * * * and the court held that the limitation applied to sewers, although in another section relating to the same subject there was a provision that the assessment for sewers should not exceed "the sum of two dollars per front foot on the property assessed." The decision of the court was evidently rested upon the ground that the word "improvement" embraced sewers. Of the correctness of this conclusion, we have no doubt. Clearly, a sewer is a municipal improvement, but this admission is far away from conceding that it is included in the words "streets or other public ways." If the legislature had intended to apply the limitation mentioned in section 3578 to municipal improvements of all kinds, it could easily have done so by using the word "improvements" in place of the words "streets or other public ways."

The next question to be disposed of is the contention of counsel for the city that the holders of the street improvement bonds should have been brought before the court in these cases. The improvements mentioned were made upon the ten year installment plan, under authority of section 3573, et seq., of the Kentucky Statutes. Provision is made in these sections for the issual by the city of street improvement bonds. These bonds are payable to bearer, and the property charged with the improvement is in lien to secure the payment of the annual installments as they become due. When collected by the city, these assessments are applied to the payment of the bonds and the interest thereon. The statute also provides that the city may at any time after one installment remains delinquent for thirty days bring a suit in

equity to enforce its lien for all of the unpaid install-
ments. In support of the contention that the holders of
these bonds were necessary parties, the argument is made
that as the city is not liable on the bonds, and the only
security the bondholders have for their payment is the
assessment against and charge upon the property for the
improvements, that if this assessment and lien is reduced
by the property holder the value of the bonds will be
lessened correspondingly, and hence the bondholders
should be made parties in order that they may protect
their interests. The city under the charter is made the
trustee of an express trust for the benefit of the bond-
holders, and may sue and defend in their behalf. Civil
Code, Sec. 21. Whether the city is liable to the bond-
holders in any amount or in any contingency is a ques-
tion not presented by the record, and for this reason we
decline to consider it. But, aside from any question of
liability or non-liability on the part of the city for and
on behalf of the bondholders, it had the right to make
any defense they could make, or present any cause of
action in their behalf that they could present, and there-
fore it would seem unnecessary that the bondholders
should be made parties to the action,—although if the
city was in any manner suffering the rights of the bond-
holders to be prejudiced, or was not taking proper action
to protect their interests, we have no doubt that the bond-
holders would be allowed to come into the case for the
purpose of asserting rights or making any defense
beneficial to their interests. But, in the absence of some
showing that the interests of the bondholders were not
being properly looked after by the city, we do not think
they were either proper or necessary parties. If the
city is attempting to exact from the lot owner more
than he is entitled to pay, or if he has any defense that
he can make against the assessment, his cause of action
to obtain relief must be against the city and not the bond-
holder; and so, if the lot owner is delinquent in the pay-
ment of his assessment, he must be proceeded against
by the city and not the bondholder. In short, the bond-
holder has no contract relations whatever with the lot
owner. Phillips v. Southern Division of C. & O. Ry. Co.,
110 Ky., 33; City of Covington v. Nadaud, 103 Ky.,
455; Gedge v. City of Covington, 26 Ky. Law Rep, 273;
City of Lexington v. Bowman, 119 Ky., 840.

The city also complains of the action of the lower
court in sustaining a demurrer to that paragraph of the

answer pleading that the appellees were estopped to object to the assessment of their property by their acquiescence in the improvements and their failure to object when the apportionment of the cost was assessed. In disposing of this question it does not seem necessary that we should go into a discussion of the acts or conduct of the property owner that would estop him from objecting to an assessment against his property for local improvements. The only question involved in these cases is whether or not the assessments exceeded the statutory limit. If they did, the city had no right to impose them, and the assessments in excess of the authority conferred were absolutely void. The power to make these assessments is granted alone by the statute, and by its terms alone the validity of the amount that may be charged against the property is to be determined. No question of estoppel can be brought into a case like this. A property owner cannot be estopped by his acts or conduct from objecting to the collection of assessments that are made in excess of the authority to make them. The excess assessment is void from the beginning. Or, to put it in a better way, there could be no assessment for the excess, and so the property owner could not be estopped from contesting the validity of a void act. Thomas v. Woods, 128 Ky., 555; City of Lexington v. Walby, 109 S. W., 299.

Wherefore the judgment in each case is reversed with directions to proceed in each case in conformity with this opinion.